ROANE IRON CO. *v.* FRANCIS.

(*Knoxville.* September Term, 1914.)

**STATUTES. Enactment. "Final judgment."**

Const., art. 2, sec. 18, provides that no bill shall become a law until it shall have been read and passed on three different days in each house, and on its final passage shall have received the assent of a majority of all the members to which the house shall be entitled. The senate of the State of Tennessee is composed of thirty-three members. Acts 1907, ch. 540, sec. 8, originating in the house, was amended by the senate, and, as amended, was passed by a constitutional majority. The matter was then referred to a conference committee; the house having refused to concur in the amendment. The senate first refused to make the conference committee report the action of that body, but, on motion to reconsider, on which the vote stood sixteen to fourteen, the action of the committee was made the action of the senate. *Held,* that the expression "final passage" means the actual final vote necessary to a bill becoming a law, regardless of parliamentary fictions; and hence act of 1907, the amendments added by the senate having been material, was not adopted in accordance with the constitution, because not receiving a majority on its final passage.

Constitution cited and construed:  Art. 2, sec. 18.

Acts cited and construed:  Acts 1907, ch. 540, sec. 8.

Cases cited and approved:  Board of Revenue v. Crow, 141 Ala., 126; Rogers v. State, 72 Ark., 565; Glenn v. Wray, 126 N. C., 730; Cohn v. Kingsley, 5 Idaho, 441; State v. Drabelle, 261 Mo., 515; Norman v. Kentucky Board, etc., 93 Ky., 537.

Case cited and distinguished:  Norman v. Kentucky Board, 93 Ky., 537.

FROM HAMILTON.

Error to the Circuit Court of Hamilton County.— NATHAN L. BACHMAN, Judge.

W. B. MILLER and WRIGHT & HAGGARD, for plaintiffs.

E. G. TOLLETT and JOHN F. McNUTT, for defendant.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is a suit to recover damages for personal injuries against appellant, Roane Iron Company. The trial judge charged that the company was liable to respond for the negligence of a gas boss on duty in its mines, basing his action on the provision of Acts 1907, ch. 540, sec. 8, which provides that:

"Said gas boss is hereby . . . declared to be the agent and representative of the operator or owner of the mine in the discharge of the duties required of said gas boss by this act."

In behalf of the company this is assigned as error, it being contended that said act of 1907 was never constitutionally passed by the legislature, so that under a previous act (Acts 1903, ch. 237), as construed by this court, the mine operator is not liable for the acts or negligence of such boss.

The ground of challenge is that the later act was not passed by a constitutional majority. The constitution provides, in article 2, sec. 18:

"No bill shall become a law until it shall have been read and passed, on three different days in each house, and shall have received, on its final passage in each house, the assent of a majority of all the members to which that house shall be entitled under this constitution."

The senate of Tennessee is composed of thirty-three members, and seventeen are, therefore, the majority required for the final passage of any bill, by the quoted provision. It is urged that the journals of the senate and house affirmatively show that the statute in question received only fifteen votes when it was finally passed by the senate.

The bill was introduced as House Bill No. 693, and the history of the bill in the stages of passage as shown by the journals may be briefly outlined as follows: After passing the house three times in the form in which it was introduced, the bill was transmitted to the senate, where on the third reading it was amended, and passed as amended by a constitutional majority; but the house refused to concur in the senate's amendment. The senate declined to recede and asked for a conference. Thereupon conferees were appointed by the respective branches of the legislature, and, as a committee of conference, the conferees agreed upon amendments to the bill as it then stood, among the amendments being the one quoted above. This we must treat as a material amendment, since, upon its being reported and adopted, the house for the first time gave its assent to the measure.

The senate, on the first test, refused to make the conference committee report the action of that body by a vote of twelve ayes to fourteen nays, but, on motion to reconsider, on which the vote stood sixteen ayes to fourteen nays, it was again moved "to make the action of the committee on conference the action of the senate," and the recorded vote, as evidenced by the names of senators voting and by the aggregate of the votes, stood fifteen ayes and fourteen nays.

Did the bill on final passage receive the required constitutional majority?

The question is to be answered by a determination of what is the meaning of the phrase "final passage," used in the constitution.

We are of opinion that the object of the makers of the constitution was to require the assent of such a constitutional majority to all of the provisions of the act on passage—not merely or necessarily the third passage. The third passage of the bill under review by the senate was not its final passage, since it was amended to make it satisfactory to the house. At first the greater number of senators registered their votes against the bill as thus amended. Was it then finally passed? If not, when it came to a second vote after reconsideration, that tested its final passage or failure to pass. This final vote, according to the mandate of the constitution, required the constitutional majority of seventeen to make the measure a law.

If the contrary be true, and the senate needed only to make the report of the conferees (with its amend-

ment for the first time sought to be imported into the measure) the action of the upper branch by a majority of a quorum, it is easily to be seen that the solemn mandatory check of the constitution may be subverted by a resort to a parliamentary trick. The court of appeals of Kentucky, in *Norman* v. *Kentucky Board, etc.*, 93 Ky., 537, 20 S. W., 901, 18 L. R. A., 566, said in reference to such contention, if granted:

"If so, then, no matter how material the change, a majority vote of a quorum may pass the bill. The words 'final passage,' as used in our constitution, mean final passage. They do not mean some passage before the final one, but the last one. They do not mean the passage of a part of a bill, or what is first introduced, and which may, by reason of amendment, become the least important. If so, then the body may pass what is practically a new bill in a manner counter to both the letter and spirit of the constitution. When the bill was voted on in the senate as amended, and after its return from the house, there never was any further action by the senate. It was the final vote, and therefore its final passage, and, being so, a majority vote of all the members elected, with an entry by yea and nay vote upon the journal, was necessary to its constitutional enactment."

It is apparent that, under a caption broad enough to admit of it, a bill might, under the rule contended for by appellee, be radically changed—made by amendment after passage on its formal reading an essentially different measure, and one that a consti-

tutional majority could not be procured to vote for in any event. It must, we think, be that a construction of the constitutional provision that would admit of such manipulation, resulting in its own easy subversion and defeat, is not the better one. *Board of Revenue* v. *Crow,* 141 Ala., 126, 37 South., 469; *Rogers* v. *State,* 72 Ark., 565, 82 S. W., 169; *Glenn v. Wray,* 126 N. C., 730, 36 S. E., 167; *Cohn* v. *Kingsley,* 5 Idaho, 441, 49 Pac., 985, 38 L. R. A., 84; *State* v. *Drabelle,* 261 Mo., 515, 170 S. W., 465.

We do not feel warranted, even in order to uphold wholesome legislation, in making by construction such a breach in a barrier that the framers of our fundamental law have thus thrown around the enactment of statutes for the protection of minorities.

The trial judge erred in basing his charge as to liability upon the act of 1907 as a valid one. Reversed and remanded.