(127 So. 739)

### EAST JEFFERSON WATERWORKS DIST. NO. 1 v. CALDWELL & CO.

### JEFFERSON PARISH WATERWORKS DIST. NO. 2 v. HIBERNIA SECURITIES CO. et al.

No. 30490.

March 31, 1930.

Conrad A. Buchler, of Gretna, and Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellants Caldwell & Co., Hibernia Securities Co., and Whitney Trust & Sav. Bank.

Emerson Bentley, of New Orleans, Alexis C. Dumestre, of Metairie Ridge, and Salvador T. Cristina, of Kenner, for appellee East Jefferson Waterworks Dist. No. 1.

John E. Fleury and Ernest M. Conzelmann, both of Gretna, for appellee Jefferson Waterworks Dist. No. 2.

BRUNOT, J.

The issues in the above entitled suits are the same, and, by agreement, they were consolidated for the purposes of the trial.

It is not necessary to state the causes of action further than to say that each plaintiff, as a governmental agency of the state, advertised for bids for the purchase of a duly authorized issue of its bonds. Caldwell & Co. was the successful bidder for the bonds offered by the East Jefferson Waterworks District No. 1, and the Hibernia Securities Company and Whitney-Central Trust and Savings Bank were the successful bidders for those offered by the Jefferson Parish Waterworks District No. 2.

Both bids were accepted, the bonds were executed and deposited with agencies, designated by the respective bidders, for delivery to them upon payment of the price bid. Delivery was tendered, but both bidders refused to accept the delivery and pay the price, and these suits, for specific performance, were filed.

The defenses to the suits are based upon the alleged unconstitutionality of Acts Nos. 51, 287, and 343 of 1926. The constitutionality of Acts Nos. 51 and 343 of 1926 was questioned in the case of Middleton et al. v. Police Jury et al., 169 La. 458, 125 So. 447, and both acts were held to be valid enactments, but the grounds of invalidity now urged by defendants were not presented to the court in that case.

Defendants allege that Act No. 51 of 1926 is unconstitutional for the reason that it was not entered in full on the Senate Journal, and for the further reason that it was amend-

ed by the Senate, that the Senate amendments were substantial, and they were not concurred in by two-thirds of the entire House.

It is alleged that Act No. 287 of 1926 is unconstitutional for the reason that the body of the act is broader than its title.

It is alleged that Act 343 of 1926 is unconstitutional for the reason that it contains blanks which destroy its meaning.

Upon the trial of these issues a separate, judgment was rendered in favor of each plaintiff, as prayed for in its petition, and the defendants appealed.

Act No. 51 of 1926 is a joint resolution proposing an amendment to section 14, par. (a) of Article 14 of the Constitution of 1921, relative to bonds of municipalities, parishes, and subdivisions thereof. Upon its introduction it became House Bill No. 171. The legislative action upon this bill from its introduction to its final passage, is accurately traced in the written opinion of the learned district judge, from which we quote the following:

"The Senate Journal shows that the amendment originated in the House of Representatives, where it was designated as House Bill No. 171. It was introduced May 24, read by title and placed on the Calendar for second reading; May 25, it was read by title and referred to Committee; May 27 it was reported favorably by Committee; May 31, it was read in full, ordered engrossed and passed to third reading; it is printed in full in the Journal of that date. June 1st, it is again printed in full in the Journal, was taken up, read in full and the Yeas and Nays entered on Journal. shows that it passed by a vote of more than two-thirds of the members elect of the House; the title was read and adopted, and the "clincher" was put on it. There is no defect in the proceedings in the House.

"The Senate Journal shows that the Bill was received June 3, and on June 7, it was read by title and returned to the Calendar. On June 8, it was taken up for second reading, read in full and referred to Committee. On June 15, the Committee reported favorably, and it was read by title and referred to the Legislative Bureau. In each of these instances the title of the bill is printed in the Journal as follows:

"'House Bill No. 171, by Mr. Conzelman. A Joint Resolution proposing an amendment to Section 14, Paragraph A, of Article XIV of the Constitution of the State of Louisiana, relative to bonds of municipalities, parishes and subdivisions thereof.'

"On June 17 the Legislative Bureau reported the bill with approval, suggesting certain amendments which are printed in the Journal, and which are immaterial in so far as they affect the purpose of the bill, being merely grammatical changes, punctuation, avoidance of tautology, not altering in the slightest degree the substance of the bill. On June 18, the bill was read by title, and the Legislative Bureau amendments were read and adopted, and the bill was passed to third reading. The title of the bill appears in the Journal, and the amendments are printed in full. On June 21, the resolution was read in full, and on roll call the vote showed 34 yeas, 0 nays, and there were five absent; the bill was declared to have received more than two-thirds of the votes of the members-elect of the Senate, and was finally passed. The clincher was put on.

"The bill then went back to the House, where it was received on June 22, and on the same day the House concurred in the Senate amendments, which are published in full in the Journal of the House, and the roll call as published in the Journal shows 63 yeas, 0 nays, and 37 absent. The bill was sent to the

Governor, and the Journal of the House shows that a communication was received from the Executive returning this and other bills signed and approved by him. The Senate Journal of June 23 reports a communication from the Clerk of the House, informing the Senate that the Speaker of the House had signed various engrossed bills, including Bill No. 171. On the same date the bill was read by title in the Senate and the Lieutenant-Governor and President of the Senate affixed his signature. The title of the Bill is printed in the Senate Journal."

The defendants do not question the regularity of the House proceedings. Their contention is that the bill was not published, in full, in the Senate Journal. We do not consider this omission fatal to the bill. A compliance with the substantial requirements of section 1 of article 21 is sufficient. The Constitution merely provides that the amendment "together with the yeas and nays thereon," shall be entered on the journal. In the case of Saunders v. Board of Liquidation of City Debt et al., 110 La. 313, 34 So. 457, 464, Chief Justice Nicholls, the organ of the court, said:

"If a constitutional requirement that a 'bill' should be read three times, in the absence of a specific declaration that the bill shall be 'read in full,' authorizes under parliamentary practice and meaning the reading of something less than each section of the bill, there is no reason why a requirement that 'an amendment' shall be read three times without declaring that the amendment should be read in full should not authorize the reading of something less than the 'amendment itself in its entirety.' What is intended to be guarded against is undue haste in the consideration of matters of legislation. The purpose of the requirement is that the subject-matter of the bill or amendment should be brought to the attention of both houses on a certain number of occasions, rather than that the details in each section should be placed each time before the houses.

"An entry in the journals of character such as to clearly identify the matter brought up each time with that ultimately adopted as a whole should seem to meet the legal or constitutional requirements. There is no particular * * * form of this entry."

In the Saunders-Board of Liquidation Case, the organ of the court quotes, with apparent approval, from the opinion rendered by the Supreme Court of Kansas, in the case known as the "Constitutional Prohibitory Amendment," 24 Kan. 700, from which quotation we excerpt the following:

"The two important vital elements in any constitutional amendment are the assent of two-thirds of the legislature, and a majority of the popular vote. Beyond these, other provisions are mere machinery and forms. They may not be disregarded, because by them certainty as to the essentials is secured. But they are not themselves the essentials. * * * The records of the proceedings of the two houses are made, not by the houses themselves, but by clerical officers. True, they are under the control of the respective houses, but in fact the records are made by clerks. May they defeat the legislative will? The constitution does not make amendments dependent upon their approval or their action. To insure certainty and guard against mistake, journal evidence of the amendment and votes is prescribed, but this is mere matter of evidence, and not the substantial condition of constitutional change. * * *

"Again, in constitutional changes the popular voice is the paramount act. While to guard against undue haste and temporary excitement, to prevent * * * frequent ap-

peals for constitutional amendments, the assent of two-thirds of the legislature is prescribed as a condition precedent, yet, after all, that which determines constitutional changes is the popular will. This is a government by the people, and, whenever the clear voice of the people is heard, legislatures and courts must obey."

Counsel for defendants rely upon expressions in a three-to-two opinion rendered in the case of State. ex rel. Morris v. Mason, Secretary of State, 43 La. Ann. 590, 9 So. 776, 805, a mandamus suit to compel the secretary of state to publish a proposed constitutional amendment. The suit was filed at a time of wide-spread political excitement in the state, and many serious issues were raised by the pleadings, one of which involved the integrity of the legislative journals of the House and Senate. If it was necessary to do so here, that case could be easily differentiated from the cases now before us. In that case the writ of mandamus was made peremptory. In a concurring opinion, Mr. Justice McEnery said:

"I think the various pretexts set up by defendant are the merest technicalities. If they are to be approved, there is a virtual denial of the sovereignty of the people. The people might at once abdicate their boasted power, and bestow it upon a chosen few. In the instant case, it would be bestowing it upon several, each independent of the other, and in their respective spheres of action each supreme. The general assembly may enact a law, but it is in the power of the secretary of the senate and clerk of the house to defeat it. These officers may do their duty, yet the public printer may defeat the law."

Defendants' second contention is that Act No. 51 of 1926 is unconstitutional for the reason that one of the amendments (Amendment No. 7) suggested by the legislative bureau and adopted by the Senate, effected a change in the substance of the act, and the amendment was concurred in by the House when less than two-thirds of its entire membership was present.

We are of the opinion that the amendment was not necessary and that it did not change or alter the substance of the bill. When the bill went to the legislative bureau, it was found that the words therein, viz.: "water works and sub-water works" were enclosed in parentheses. The legislative bureau suggested the elimination of the parentheses. The suggestion was approved and the Senate amended the bill accordingly. The bill originated in the House. It appears that in its passage through the House it was printed in the House Journal three times and in none of these printings do the parentheses appear. Whether or not they were in the original draft of the bill is only problematical. The journal evidence and the fact that the House concurred in the Senate amendment eliminating the parentheses cannot be overcome by the unexplained circumstance that the parentheses were in the bill when it reached the legislative bureau and now appear in the published act. The legislative intent is beyond question. The trial judge correctly says:

"It is patent that the published Act No. 51 is erroneous and does not conform to the act actually adopted by the Legislature. This error results from neglect of someone, possibly the Clerk of the House, the Secretary of the Senate, or the Secretary of State, to correct the copy of the act before it was finally printed."

The contention that Act 287 of 1926 is broader than its title is urged upon the ground that the title does not indicate the intention to add "water works and sub-water works" to the title and amended sections of Act 46 of 1921. The act is entitled:

"An Act to amend and re-enact the title and Section 1 of Act 46 of 1921 and Sections 2 and 10 of Act 46 of 1921, as amended by Act 209 of 1924 being an act 'To authorize municipal corporations, parishes and school, road, sub-road, sewerage, gravity drainage and sub-drainage districts to incur and refund debt and issue negotiable bonds and regulating and prescribing the procedure therefor."

Section 1 of the act amends the title of Act 46 of 1921 to read as follows:

"To authorize municipal corporations, parishes and school, road, sub-road, sewerage, water-works and sub-waterworks, gravity drainage and sub-drainage districts to incur and refund debts and issue negotiable bonds and regulating and prescribing the procedure therefor."

Section 2 of the act amends section 1 of Act 46 of 1921, and sections 2 and 10 of Act 46 of 1921, as amended by Act 209 of 1924, so as to add "water works and sub-water works" to said sections, as governmental agencies, in addition to the governmental agencies theretofore enumerated therein. The provision of the act (section 4) is as follows:

"That this Act shall become operative if and when Act No. ———— of the Legislature of Louisiana for the year 1926, a joint resolution proposing the amendment to the sub-section (a) of Section 14 of Article XIV of the Constitution of Louisiana relative to sub-divisions of the State, has been ratified."

The act referred to in the quoted proviso was House Bill No. 171 which was subsequently numbered Act No. 51, the "joint resolution proposing an amendment to Section 14, Par. (a) of Article XIV of the Constitution of the State of Louisiana relative to * * * subdivisions thereof." Counsel for defendants rely upon the case of State v. Louisiana, Coca-Cola Bottling Co., Limited, 169 La. 167, 124 So. 769. The case is not analogous to the case at bar, for the reason that the addition of "water works and sub-water works" were matters germane to the amended sections of Act 46 of 1921.

We think the jurisprudence is that where sections of an act are amended by the addition of matters germane to the original act and pertinent to the matters in the original sections, the amendments may be made without changing the title of the original act, although in this case the title of Act 287 shows that one of the purposes of that act is to amend the title of Act 46 of 1921.

The contention that Act 343 of 1926 contains blanks which destroy its meaning is based upon the fact that the number which was given House Bill No. 171, the joint resolution described in section 4 of Act 287, quoted supra, was not given in Act 343. Section 15 of Act 343 is a mere copy, verbatim et literatum of section 4 of Act 287. When Acts 287 and 343 were passed it was not possible to ascertain what number would be given House Bill No. 171 if, and when, finally enacted.

For these reasons, we think the judgments appealed from are correct, and they are therefore affirmed at the cost of the respective defendants.

O'NIELL, C. J., is of the opinion that Act 51 of 1926 is unconstitutional because the amendments made by the Senate were not concurred in by two-thirds of the members of the House of Representatives, and is of the opinion that it matters not how important or unimportant the court may deem such an amendment.