[Civil No. 3355.   Filed April 29, 1933.]

[21 Pac. (2d) 914.]

WILLIAM M. COX, as Treasurer of the State of
Arizona, ARTHUR T. LA PRADE, as Attorney
General of the State of Arizona, and FRANK
LUKE, M. A. MURPHY and THAD MOORE,
as Members of the Tax Commission of the State
of Arizona, Appellants, v. STULTS EAGLE
DRUG COMPANY, a Corporation, Appellee.

(1)

2

Mr. Arthur T. La Prade, Attorney General, and Mr. Charles L. Strouss, Assistant Attorney General, for Appellants.

Messrs. Struckmeyer & Jennings and Mr. Henry S. Stevens, for Appellee.

McALISTER, J.—The purpose of this action is to test the validity of House Bill No. 146, commonly known as the "Privilege-Sales Tax" which was certified to the Secretary of State as one of the acts passed by the eleventh legislature. The plaintiff, Stults Eagle Drug Company, a corporation, filed a

complaint against the state officers charged with its enforcement seeking to secure from the court a declaratory judgment determining whether it was passed in accordance with the provisions of the Constitution, and, if it was, whether it is now in effect or will become so only after the expiration of ninety days from the close of the eleventh legislature. The trial court held it to be wholly void, and the defendants have brought the matter to this court for review.

It appears from the complaint that this bill, which contains a section declaring it to be an emergency measure, passed the House of Representatives in which it originated by a vote of two-thirds of its membership and was transmitted to the Senate, which amended it in several important particulars and then passed it as amended by a two-thirds vote of its membership. Thereupon it was returned to the house, which concurred in the Senate amendments by a vote of 38 yeas to 26 nays, the membership thereof being 64. Notwithstanding the measure contained the emergency clause and the amendments were approved by less than two-thirds, the Speaker of the House declared it passed by that body, whereupon it was presented to the Governor and by him approved. These facts, including the vote concurring in the Senate amendments, appear upon the enrolled bill as filed in the office of the Secretary of State. At the trial the plaintiff offered in evidence and the court received over the objection of the defendants a copy of that part of the House Journal containing the amendments made by the Senate.

The principal assignment is that the court erred in rendering judgment that the bill was not constitutionally passed. The basis upon which this alleged error rests is, to state it in the language of appellants, that "the final passage of a measure is

the vote taken by a house upon the third reading of the measure upon the question whether or not it shall become a law, and does not include a vote subsequently taken upon concurring in amendments made by the other house." The correctness of this contention depends upon the meaning of certain provisions of the Constitution, chief among which is section 12, part 2, article 4, which reads as follows:

"Every bill shall be read by sections on three different days, unless in case of emergency, two-thirds of either House deem it expedient to dispense with this rule; but the reading of a bill by sections on its final passage shall in no case be dispensed with, and the vote on the final passage of any bill or joint resolution shall be taken by ayes and nays on roll call. Every measure when finally passed shall be presented to the Governor for his approval or disapproval."

It is, of course, plain that if the words, "final passage," as used in the first sentence of this section, mean the vote of each house taken by ayes and nays on roll call following the third reading of the measure, House Bill No. 146 is a law now and the contention of appellants should be upheld; but to my mind this is not the meaning to be given them when the facts which are being dealt with are similar to those in this case. It is clear that "final passage" of a bill is had in either house of the legislature when it receives the required vote taken by ayes and nays on roll call following the third reading of a bill, because there is then nothing further for that house to do relative to it other than transmit it to the other branch of the legislature for its consideration; and if that house approve it as passed in the other by an aye and nay vote taken on roll call, such action constitutes not merely final passage in that branch of the legislature also, but "final passage" of the bill within the meaning of section 12, because it has passed both

houses in the same form and there is nothing further for either of them to do with it to complete it. But in case the house to which it is transmitted amends it before passing it on third reading and as amended returns it to the house in which it originated, it is clear that concurrence in the amendments by this house completes the passage of the bill and, to my mind, this act constitutes "final passage" within the meaning of the Constitution.

The authorities are somewhat divided as to the meaning of the term when used in this connection, some of them holding, as appellants contend, that it refers to the passage on third reading, the vote being taken by ayes and nays on roll call. Among those taking this view may be mentioned the following: *State* v. *Dillon,* 42 Fla. 95, 28 So. 781; *Johnson* v. *City of Great Falls,* 38 Mont. 369, 99 Pac. 1059, 16 Ann. Cas. 974; *State* v. *Crowe,* 130 Ark. 272, 197 S. W. 4; Ann. Cas. 1918D 460, L. R. A. 1918A 567. But those decisions which hold that concurrence by the house in which a bill originates and is passed with the amendments made by the other house constitutes "final passage" announce, as I see it, the better rule, because they are based on the situation that actually exists and on reason so sound that it is unanswerable. One of the cases on the subject most frequently quoted is *Norman* v. *Kentucky Board of Managers, etc.,* 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556. The court was there considering the validity of an act that originated in the Senate where it passed by the proper vote, was transmitted to the other house where it was amended and there passed by the required vote, and then returned to the Senate which concurred in the house amendments by a vote of less than a majority of the members elected to the Senate, notwithstanding the Constitution of that state provided that any act appropriating money should be

passed by a majority of the elected membership of each house. In giving its reasons for holding that concurrence in the amendments and not the passage of the bill on third reading in the respective houses constituted final passage, the court used the following language which, to my mind, is absolutely conclusive on the subject and needs no elaboration:

"It is conceded by the counsel for the appellees, and seems plain, that this mode of proceeding did not conform to the constitution. It complied with it in neither letter nor spirit. The object of the section above cited was to have the assent of a majority of all the members elected to each house to all the provisions of the act, and that this should appear by a yea and nay vote entered upon its journal. If a bill, after passing one house in the proper manner, and then, after amendment, passing the other house in like manner, could come back to the house in which it originated, and be adopted by a majority of those voting, or a quorum, it would defeat this object, and render the section ineffectual. Let us look at it practically. An appropriation bill of $100 originates in the senate, and is properly passed. It goes to the house, where it is amended by making the sum $10,-000, and is then properly passed by it. It returns to the senate for concurrence, and is adopted, as amended, by a majority of those present, without a yea and nay vote. Can it be well contended that this would be a compliance with the constitution? . . .

"It is true it has been held that the 'final passage' of a bill means when it first passes the body, and not when it returns to it, after amendment, for adoption; and it is said that the constitutional provision as to the number of votes, and the entry of the yea and nay vote on the journal, does not apply to amendments, or the reports of conference committees. If so, then, no matter how material the change, a majority vote of a quorum may pass the bill. The words 'final passage,' as used in our constitution, mean final passage. They do not mean some passage before the final one, but the last one. They do not mean the passage of a part of a bill, or what is first intro-

duced, and which may, by reason of amendment, become the least important. If so, then the body may pass what is practically a new bill in a manner counter to both the letter and spirit of the constitution. When the bill was voted on in the senate, as amended, and after its return from the house, there never was any further action by the senate. It was the final vote, and therefore its final passage; and, being so, a majority vote of all the members elected, with an entry by yea and nay vote upon the journal, was necessary to its constitutional enactment. The bill, as approved by the speakers of the two houses and by the governor, never was passed by the senate, by a majority of all its members, nor by a yea and nay vote.''

To the same effect are the following: *Roane Iron Co.* v. *Francis,* 130 Tenn. 694, 172 S. W. 816; *Ex parte May,* 118 Tex. Cr. R. 165, 40 S. W. (2d) 811; *Cohn* v. *Kingsley,* 5 Idaho 416, 49 Pac. 985, 38 L. R. A. 74; *Glenn* v. *Wray,* 126 N. C. 730, 36 S. E. 167.

That such is the proper construction of this term as used in the Constitution conclusively appears from that instrument itself. The last sentence of section 12, *supra,* is that ''every measure when *finally passed* shall be presented to the Governor for his approval or disapproval''; hence, if final passage means the final action of one house in passing on third reading a measure transmitted to it by the house in which it originated, its duty is then, not to return it to that body for concurrence in the amendments, but to present it to the Governor for approval or disapproval, regardless of any amendments it may have made, because presenting it to the Governor is the next step to be taken when a bill has been finally passed. The mere statement of this proposition not only shows the utter fallacy of such a contention but establishes beyond peradventure of doubt that in the minds of the framers of the Constitution the last vote of either house on a bill before presenting it to the Governor

constitutes its final passage. The terms "finally passed" and "final passage," as used in this section, mean the same thing, and that is the vote in either house that completes the passage of the measure. This meaning accords with the usual practice of parliamentary bodies and is so generally recognized that the Senate of Kansas, it appears from *Stephens* v. *Board of Commrs.*, 79 Kan. 153, 98 Pac. 790, even put it in the form of a rule. Rule 39 of that body, when the decision was rendered, read:

"A vote to concur in House amendments to a Senate Bill or a vote to adopt the report of a conference committee shall be considered the final passage of a bill and shall be taken by the yeas and nays and entered on the journal."

House Bill 146 contains a section declaring it to be an emergency measure and subsection 3 of section 1, part 1, article 4 of the Constitution provides "that no such emergency measure shall be considered passed by the Legislature unless it shall . . . be approved by the affirmative votes of two-thirds of the members elected to each House of the Legislature, taken by roll call of ayes and nays, and also approved by the Governor." When, therefore, the motion to concur in the Senate amendments failed to receive the affirmative votes of forty-three members of the House, that being two-thirds of its elected membership of 64, passage was never completed, hence the bill cannot "be considered passed by the Legislature." To hold that any of the preceding votes in either house constituted final passage is to hold that the bill became a law, notwithstanding it was an emergency measure requiring a two-thirds vote and notwithstanding the Senate so amended it that five members of the House who had supported it when it passed that body, declined to concur in the amendments and, therefore, to approve it as amended. A bill carrying the emergency may, it is true, be

amended in either house prior to third reading by a majority of those voting because there yet remains the necessity of each body's passing it by two-thirds on that reading, but this does not signify that amendments made by the house to which it has been transmitted may be concurred in by a like majority of the house to which it is returned, because at that stage of the procedure there seems to be no requirement that the bill, as it stands after a majority of even a quorum of the house in which it originated has accepted the amendments, shall be voted on as amended. This being true, the only opportunity either house has to pass upon amendments made by the other is on the motion to concur, and since the changes made may be so material in effect as to make a new and different bill they must be approved by the vote required to pass the measure originally. If this were not true, portions of an emergency bill might be passed by two-thirds and other portions (perhaps the more important) by a bare majority of the membership or less. It is plain that any rule that would permit such a course of action does not conform to the Constitution. The vote on concurrence, therefore, is the last and final vote on the bill in either house and to be effective must equal two-thirds of the membership of the house taking it. To give it any other effect means no more nor less than setting aside the provision of the Constitution which reserves to the people "the power to approve or reject at the polls any Act, or item, section, or part of any Act, of the Legislature," because the result of such a holding is that a bare majority, not two-thirds, may render immediately operative any act of the legislature.

Neither can I agree with the contention that the act, having received on final passage a majority of the votes of the members of the House of Representatives, will become operative ninety days follow-

ing the close of the legislature. The excerpt quoted above from subsection 3, section 1, part 1, article 4, provides that "no such emergency measure shall be considered passed by the Legislature unless it shall . . . be approved by the affirmative votes of two-thirds of the members elected to each House of the Legislature, taken by roll call of ayes and nays," and, it occurs to me, that this language needs no construction. It is plain that no emergency measure shall be treated as passed unless it receives a two-thirds vote and, therefore, it cannot become operative ninety days after the close of the session enacting it any more than it could immediately upon passage. If this provision read that "no such measure shall be considered passed as an emergency," the contention of appellants, that it would become operative ninety days after the close of the session, might have merit, but inasmuch as it uses the all-inclusive term, "no such emergency measure," when referring to those not considered passed without the two-thirds vote, there is nothing more to say. The purpose of the emergency clause is to make a measure operative immediately upon passage, not ninety days thereafter, and when legislators support such a measure they do so with this thought in mind, never thinking for a moment that it will become a law at all in the absence of a two-thirds vote in its favor. Members frequently support measures containing the emergency clause when they would not do so without it, because its nature is such as to demand its immediate operation, and to postpone this date ninety days and render it subject to the referendum would probably defeat its purpose. Clearly such a measure could not become operative ninety days hence when the emergency is inserted to render it effective immediately or not at all, since it would not have contained this clause had the purpose been to make it operative at some future date.

Even though it be true that the measure did not receive a two-thirds vote of the house membership on final passage appellants contend that there is no way by which the court may be advised of this fact for the reason that the enrolled act filed with the Secretary of State is conclusive thereto, and the legislative journal may not be examined or looked into for the purpose of determining if it were in fact passed in accordance with constitutional requirements. To support this view they cite *Allen* v. *State,* 14 Ariz. 458, 130 Pac. 1114, 44 L. R. A. (N. S.) 468, in which this court held substantially as contended. The situation with which we are confronted here, however, is not one calling necessarily for a departure from this rule because along with House Bill 146 as filed in the office of the Secretary of State appears over the signatures of the Speaker and chief clerk of the house a statement that it passed that body by a vote of 38 ayes and 26 nays, which is 5 short of a two-thirds majority. And when we learn from the bill itself through the statement of the presiding officer both that it passed the house and that it did so by a certain vote no other facts are needed to enable us to determine whether it finally passed in accordance with the provisions of the Constitution. It is not then necessary to look to the House Journal for the defect, a situation that *Allen* v. *State, supra,* recognizes, for in the opinion in that case the court quotes approvingly the following excerpt from *Green* v. *Weller,* 32 Miss. 690:

"It may be that legislative acts may be passed without a compliance with the requirements of the constitution. If such defect or violation appear on the face of the act, or by that which constitutes the record, which can be judicially noticed, the power of the court to determine the question is indisputable."

It may be that the vote by which the house concurred in the Senate amendments is a copy of an

entry in the House Journal and that it, no more than the vote by which the bill passed on third reading in each house, is specifically required by the Constitution to be placed upon the enrolled bill, yet it is also true that that instrument nowhere directs or even intimates that it shall not be done, and such has been the procedure followed since the first state legislature and is certainly commendable. If, however, the rule announced in the Allen case requires us to shut our eyes to its presence there merely because the Constitution has not specifically directed that it be placed on the enrolled bill, and it is our duty in consequence of this to consider it as mere surplusage, I would be unable to follow the holding in that case to this extent and thus treat the House Journal as a sealed book where a matter so vital as the vote required to pass a bill is concerned. If the insufficiency of the vote had not appeared upon the enrolled act itself and the plaintiff had offered to prove by the House Journal that it did not receive the necessary vote and avowed that that record, not by its silence but by an entry made therein, would disclose this fact, it would undoubtedly have been error for the trial court to have refused to receive it in evidence. While the enrolled act itself is strong evidence that it was properly enacted and an attack upon its validity upon any trivial ground should not be allowed, yet the presumption that it received the proper vote is not conclusive and may be rebutted. If the claim were that the act did not pass because the legislature failed to observe certain constitutional provisions and that this was true because compliance therewith did not affirmatively appear in the journal, it is probable that the better rule would be to permit the presumption that the legislature did its duty as prescribed by the Constitution to prevail, and uphold the act; but where the claim concerns the fundamental requirement that a measure shall receive a vote of a certain percent-

age of the membership of the house involved before it passes and this failure affirmatively appears on the journal, it would, to my mind, be the duty of the court to admit the journal in evidence, otherwise there is no way by which an act which has received less than the required vote but has been certified by the proper officer as passed can be set aside. The rule which to my mind should govern in the situation with which we are here confronted appears in the following syllabus of *Ritzman* v. *Campbell et al.*, 93 Ohio St. 246, 112 N. E. 591, Ann. Cas. 1918D 248, L. R. A. 1916E 1251:

"A duly enrolled bill, although publicly signed by the presiding officer of each house, in the presence of the house over which he presides, while the same was in session, and capable of doing business, and afterward approved by the Governor and filed by him with the secretary of state, may be impeached on the ground that it has not received a constitutional majority of the members elect of both branches of the General Assembly, and upon this question the legislative journals must provide the appropriate as well as the conclusive evidence."

See, also, *Norman* v. *Board of Managers, etc., supra; In re Drainage District No. 1,* 26 Idaho 311, 143 Pac. 299, L. R. A. 1915A 1210; *Butler* v. *Kavanaugh,* 103 Ark. 109, 146 S. W. 120; *Denver* v. *Rubidge,* 51 Colo. 224, 116 Pac. 1130; *Neiberger* v. *McCullough,* 253 Ill. 312, 97 N. E. 660; *State* v. *Wagener,* 130 Minn. 424, 153 N. W. 749; *Webb* v. *Carter,* 129 Tenn. 182, 165 S. W. 426.

For this court to permit a measure passed as was House Bill 146 to stand as law, upon the theory that the legislative and judicial departments of the government are co-ordinate and independent and that it would tend to destroy the independence of the legislative by making it subordinate to the judicial to allow the journal to impeach a final act of the legislature even on a matter so important as the vote by which

it was enacted is no more nor less than saying that the legislature is not bound by constitutional mandates directed to it and that a measure may become law whether it receives the required vote or not merely because it has been certified by the presiding officer of the respective houses of the legislature as having passed and has been approved by the Governor.

After all is said and done there is no escape from the conclusion that to hold that House Bill 146 is a valid enactment is to say that the referendum may be defeated by less than a two-thirds vote of either house of the legislature, and this I cannot do even in the face of the emergency confronting the state. The remedy is with the legislature itself.

House Bill 146 did not receive the vote necessary to pass it and is void. The judgment of the trial court is, therefore, affirmed.

LAMSON, Superior Judge, concurs.

Note.—Judge LOCKWOOD being ill, Judge RICHARD LAMSON, of Yavapai county, was called to sit in this case.

ROSS, C. J., Dissenting.—This proceeding seeks to have determined by declaratory judgment the validity of House Bill No. 146 of the eleventh legislature, commonly known as the "Privilege Sales Law," and involves the question as to whether the legislature in its passage observed the essential requirements of the Constitution in the enactment of an emergency measure. Involved, also, is the question as to whether, if it was not enacted as an emergency measure, it became a law subject to the referendum. The trial court was of the opinion that the legislature had not observed the constitutional mandates in its passage, and that it did not become a law. The Attorney General, on behalf of defendants, has appealed.

The journal entries of the Senate and House were offered and allowed in evidence, and therefrom the history of the bill in its passage, in so far as material to the questions involved, appears to be as follows: The bill was passed as an emergency measure by the house on March 3, 1933, by 43 ayes and 21 nays, constituting the whole membership of the house. It was sent to the senate, and on March 11th the senate very materially amended it, and, as amended, passed it, with 15 voting aye and 3 voting nay, 1 absent. It was then returned to the house, which on the same day "concurred in senate amendment," 38 voting aye and 26 nay. The bill was properly signed and authenticated by the presiding officers of each house, in open session; thereafter, within the time prescribed by the Constitution, it was presented to the Governor and by him approved and lodged with the Secretary of State.

The defendants contend (1) that the legislative journals may not be received in evidence to impeach or contradict the enrolled bill, or to show that it was not constitutionally passed; (2) that the final passage of a bill means under our Constitution its passage upon third reading, and does not embrace amendments.

Plaintiff takes the position that the journal entries are competent evidence and may be referred to to see whether an enrolled bill was passed in the constitutional way; and, further, that because the house concurrence in the senate amendment was not by a two-thirds vote of all its members, House Bill No. 146 was not enacted into law.

Subdivision 3, section 1, part 1, article 4, of the Constitution provides that no measure enacted by the legislature, except emergency measures, shall be operative for 90 days after the close of the session of the legislature enacting such measure. The last sentence of this subdivision reads as follows:

"Provided, that no such emergency measure shall be considered passed by the Legislature unless it shall state in a separate section why it is necessary that it shall become immediately operative, and shall be approved by the affirmative votes of two-thirds of the members elected to each House of the Legislature, taken by roll call of ayes and nays, and also approved by the Governor; and should such measure be vetoed by the Governor, it shall not become a law unless it shall be approved by the votes of three-fourths of the members elected to each House of the Legislature, taken by roll call of ayes and nays."

Sections 10, 12 and 15, part 2, of said article 4, in connection with the quoted part of subdivision 3, section 1, part 1, *supra,* are the constitutional provisions most directly bearing upon the questions involved. They read as follows:

"Section 10. Each House shall keep a journal of its proceedings, and at the request of two members the ayes and nays on roll call on any question shall be entered."

"Section 12. Every bill shall be read by sections on three different days, unless in case of emergency, two-thirds of either House deem it expedient to dispense with this rule; but the reading of a bill by sections on its final passage shall in no case be dispensed with, and the vote on the final passage of any bill or joint resolution shall be taken by ayes and nays on roll call. Every measure when finally passed shall be presented to the Governor for his approval or disapproval."

"Section 15. A majority of all members elected to each House shall be necessary to pass any bill, and all bills so passed shall be signed by the presiding officer of each House in open session."

I take it from these provisions that the requirements to pass an emergency measure are precisely the same as those essential to pass an ordinary measure, except the former shall be approved by the affirmative votes of two-thirds of the members of each house instead of a majority of all the members elected to

each house as in nonemergent measure. Such was the holding of this court in *Clark* v. *Boyce,* 20 Ariz. 544, 185 Pac. 136. While our Constitution requires that each house shall keep a journal of its proceedings, it nowhere directs or prescribes that the votes on any question shall be entered in the journal except upon the request of two members. It provides for the taking of the votes by ayes and nays on roll call on the final passage of any bill or joint resolution, but it does not require that such vote be entered on the journal. In an ordinary measure, that is, one subject to referendum, an affirmative vote of a majority of all members elected to each house is necessary; and to an emergency measure two-thirds of all members is necessary. But nowhere is it made essential that the votes on the final passage of either shall be entered in the journal. In other words, while it is provided in the Constitution that each house shall keep a journal of its proceedings, it is not mandatory that the vote on the final passage of a bill be entered in the journal. It is true that the aye and nay votes on that question, as upon all other questions, must be taken and entered in the journal upon the request of two members. Thus, as to whether the votes of the members shall be entered in the journal is left entirely optional with that body or at least two of its members. It is entirely directory as to what the journal shall contain.

There are two lines of decisions, one holding that the enrolled bill, properly authenticated by the signatures of the presiding officers of the two houses and approved by the Governor, may not be impeached by the journal entries; and the other holding that the journal entries are competent evidence to show that the constitutional provisions were not observed by the legislature in passing a bill. In *Allen* v. *State,* 14 Ariz. 458, 130 Pac. 1114, 44 L. R. A. (N. S.) 468, this court went fully into the question and came

to the conclusion that the "enrolled bill doctrine" was the correct one. In that case we said:

"The cases cited may be distinguished in particulars, but the principle announced and adhered to is that the judicial department must keep within its sphere; that it must not arrogate to itself a superiority over the other two co-ordinate and coequal departments of the government, and erect itself into a tribunal to watch with jealous scrutiny the acts confided by the fundamental law to another department; in short, the doctrine that the records of the legislative and executive departments of the government, when promulgated and authenticated and deposited with the legal custodian thereof, as provided in the Constitution, import a verity which is conclusive upon the judicial department, and which record may not be impeached by any evidence *aliunde* such record is sturdily vindicated in them all. . . .

"Mandatory provisions of the Constitution as to the making of laws are directed to the attention of the legislative department, and are binding on the conscience of those whose duty it is to observe them. This is likewise true of the executive and judicial departments within their sphere. Until the people, through their fundamental law, shall require the courts to supervise and direct the actions of the other departments in the process of making laws, we shall adhere to the theory of government that those departments are responsible to the people for any neglect of duty, and not to the courts, and that their records, when authenticated as required by the Constitution and presented to this department, will import absolute verity, and conclude us from going beyond such records to impeach them."

In the absence of any mandate in our Constitution to the legislature to enter on its journals the vote upon the final passage of measures, or amendments thereof, the rule announced in the Allen case seems very fair and reasonable. Appellee's counsel do not challenge that rule, but say it has no application, for the reason that House Bill 146 as enrolled shows on its face it did not receive the affirmative vote of two-

thirds of the members of the House. This statement is not true in fact or in law. I presume, however, it is made because appended to the back of the bill as authenticated by the presiding officers of the house and senate and approved by the Governor is a statement of the vote of concurrence by the house in the senate amendment, signed by the speaker and secretary of the house. This, I suppose, is a memorandum from the house journal, but it is no part of the bill, does not appear upon its face, and in the form it appears is not even evidence. A slip of paper signed by the speaker and secretary of the house, without any further authentication, is not made evidence either by the Constitution or by any statute of the state. The journals themselves are the best and only evidence of the action of the legislature, and of them the court will take judicial notice in a proper case.

"Judge Sutherland, in his work on Statutory Construction (section 46), states the law as follows: 'When an act is found lodged in the office of the secretary of state, with the public acts passed at the same session, signed by the presiding officers, approved and signed by the governor, and it is published by authority as one of the public statutes of the state, or is otherwise authenticated according to law, and in proper custody, the presumption is that it was regularly passed, unless there is evidence of which the courts take judicial notice showing the contrary. The journals are records, and, in all respects touching proceedings under the mandatory provision of the constitution, will be effectual to impeach and avoid the acts recorded as laws, and duly authenticated, if the journals affirmatively show that these provisions have been disregarded. In the absence of such an affirmative showing, and even in cases of doubt, it will be presumed that a quorum was present; that the necessary readings occurred; that amendments made by one branch, though extensive, were germane; that they were concurred in by the other

branch,—though the journals may be silent.'"
*Ritchie* v. *Richards,* 14 Utah 345, 47 Pac. 670.

Cooley on Constitutional Limitations, on page 162, announces the same rule.

There is no competent evidence in the record of the vote of concurrence in the Senate amendments unless judicial notice is taken of the history of the passage of the bill as recorded in the house journal, or we accept what seems to be an undisputed fact.

Many, indeed most, of the cases that I have examined, where the "enrolled bill doctrine" and "journal entry doctrine" have come into view, have been decided by divided courts. One of the leading cases on the question is *Rash* v. *Allen,* 1 Boyce (Del.) 444, 76 Atl. 370, and in the prevailing opinion the court stated that, where the Constitution requires an entry on the journal, it is mandatory, but added: "It is a very different proposition when the entry of the yeas and nays is directory, and not mandatory, or a prerequisite to the validity of the act." In that case the court quotes from the dissenting opinion of Chief Justice SULLIVAN in *Cohn* v. *Kingsley,* 5 Idaho 416, 49 Pac. 985, 38 L. R. A. 74, with approval as follows:

"The weight of authority under Constitutions similar to ours, so far as I have examined, is that, unless the journal affirmatively shows that some requirement of the Constitution in the passage of a bill has been omitted, the presumption is that such requirement has been complied with, although the journal be silent in regard thereto, except when the Constitution commands such act to be entered on the journal. For example, where the Constitution declares that on the final passage of a bill the vote must be by yeas and nays, and entered on the journal, in such a case the act would be held invalid if the journal failed to affirmatively show that such vote was taken and entered as commanded by the Constitution. . . .

"My conclusion is that a law passed by the Legislature should not be held invalid because of the fact that the journals fail to show that each and every

act required by the Constitution to be done in the passage of such law had been done, unless such act or proceeding is expressly commanded by the Constitution to be entered on the journal. As for instance, the vote on the final passage of a bill is commanded by the Constitution to be taken by yeas and nays—in such case the court would have jurisdiction to hold such bill invalid, and should do so. But if the journal was silent as to the printing of the bill, and the three several readings in each house, and of the adoption of an amendment by yea and nay vote, as those acts are not expressly commanded to be entered in the journal, the presumption would be that those necessary acts were done, and such bill held valid. Otherwise if the journal fail to show the final passage of such bill by a yea and nay vote, as the final passage of a bill is expressly commanded to be by yeas and nays and entered on the journal."

I think an examination of the cases will demonstrate that most of those courts that have recognized the journal entry doctrine limit it to the rule as stated by Chief Justice SULLIVAN in the Idaho case. That was the conclusion of the court in the case of *Rash* v. *Allen.*

It is well known that bills after their introduction do not often escape amendment in one or both houses. No one knew this better than the framers of our Constitution. However, they made no provision in the Constitution concerning amendments to bills. The method or manner of effecting amendments was left by and large to the legislature. In details of this kind the legislature was not hampered or unnecessarily restrained. Section 9, part 2, article 4, of the Constitution, reads in part: "The majority of the members of each house shall constitute a quorum to do business. . . . " This by fair construction it would seem means that a majority of the members of each house could do any and all kinds of legislative business, including amendment of bills, with the exceptions that they cannot pass an ordinary measure

except by a majority vote of all the members elected to each house, or an emergency measure except by a two-thirds vote of the members elected to each house. These are the only restraints upon the power to do business by the majority of the members of each house. When the house concurred in the senate amendments to House Bill 146, all the members were present and voting, and the amendment was concurred in by a substantial majority of the total membership of the house. It is contended, however, that this vote of concurrence was the final passage of the measure and to be effective should have been approved by two-thirds of all the members of the house. If the premise is correct, the conclusion drawn naturally follows. The premise, however, is not correct. Section 12, part 2, article 4, *supra,* requires, among other things, that every bill shall be read by sections on three different days. That means three times, of course. It cannot be passed on either the first or second reading. By the very terms of that section its final passage is on third reading. Although the first and second readings may be dispensed with by a two-thirds of either house—not so that of the third reading. The third reading must be by sections, because the bill is on its final passage, and the vote thereon must be taken by ayes and nays on roll call. To say that the final passage of a bill is the concurrence in an amendment of such bill is injecting into the Constitution something not put there by the framers. By no reasonable or fair construction can it be said the language of the Constitution makes the concurrence in an amendment the final passage, nor do I think it should be warped or stretched to include such in a contingency like the present. If the concurrence in the amendment was the final passage of the bill, then, to be consistent, it should have been read, after the amendment, by sections on three different days and on the third reading approved by

an affirmative vote· of two-thirds of the membership of the house. Where, in the Constitution, is there any suggestion that amendments shall be read on three different days, or that the bill as amended shall be read on three different days? It would seem that when the house on the third reading of the bill passed it by an affirmative vote of two-thirds of its members that it gave the bill the status of an emergency measure. It could be taken from that category only by a vote to reconsider, and while in that status, just as an ordinary bill, a majority of a quorum of the house in carrying on its business could amend it.

It is said that the sentence in section 12, *supra,* reading, "Every measure when finally passed shall be presented to the Governor for his approval or disapproval," does not refer to the final passage but to the bill as it was concurred in. However, *concurrence* in a bill does not finally pass it—is not its final passage. Section 12, *supra,* should be construed in connection with section 7, article 5 (Executive Department), which reads: "Every bill passed by the Legislature, before it becomes a law, shall be presented to the Governor. *If he approve, he shall sign it, and it shall become a law as provided in this Constitution.*" (Italics ours.) That is, if the bill be one subject to the referendum, it shall receive the approval of the majority of each house, and, if an emergency measure, two-thirds of each house on its final passage; and that, when approved by the Governor, as in this case was done, it becomes a law.

I think it quite clear from the rules of the House of Representatives of the eleventh legislature (1933) that the members thereof did not think it necessary that a concurrence in an amendment by the Senate should be by a two-thirds vote on roll call, except where the amendment of the House Bill *included the addition of the emergency clause.* Section 2 of Rule XVI reads: "Any amendment of the Senate which

includes the addition of the emergency clause, shall require a two-thirds vote on roll call for concurrence." The emergency clause on House Bill 146 was placed there by the house, and was there when the house finally passed it and sent it to the senate. Therefore, this rule did not require a two-thirds vote for concurrence in the senate amendment. This rule of the house has the force and effect of law. Its adoption and promulgation finds sanction in section 8, part 2, article 4, of the Constitution, wherein it is provided: "Each House, when assembled, shall . . . determine its own rules of procedure." Since this rule does not conflict with or contravene any provision of the Constitution, but, on the contrary, is in harmony therewith, I see no reason for a two-thirds vote of the entire membership of the house on' the concurrence in the senate amendments.

The rules of both the house and the senate recognize that the final passage is upon the third reading of a bill. Senate Rule XXI, section 5, subdivision (f), Rules of 1931, says:

"Upon report from the Committee on Enrolling and Engrossing, the bill shall be placed on third reading and final passage." See House Rule XVIII, §§ 5 and 9.

While the courts are not in accord as to when a bill is "finally passed," or as to the meaning of "final passage," as those phrases are used in the different Constitutions, my investigation satisfies me that the weight of authority, and of reason, is that they mean the vote taken on the third reading of the bill, upon the question as to whether or not it shall become a law, and does not include a vote subsequently taken on the question of concurring in amendments.

In *State* v. *Dillon*, 42 Fla. 95, 28 So. 781, which, by the way, is a state in which the journal entry doctrine is recognized, the court said:

"There are differences of opinion among the courts as to what constitutes the 'final passage' of a bill, within the meaning of constitutional provisions relating to the vote on the final passage of bills being taken by yeas and nays, and entered upon the journals of the legislature. Cases have been cited to us holding that the 'final passage' meant is the vote in each house which adopts the bill as it is afterwards enrolled and presented to the governor for his signature. The provision which we have quoted from our constitution speaks of the first and second reading and final passage of the bill, and it seems to us, from the connection in which they are used, that the words 'final passage' in our constitution can legitimately refer to nothing else than the vote in each house which adopts the bill after it has passed its first and second readings, and after it has been read again for the purpose of being put upon its passage. No doubt, after passing one house, it may be very materially amended in the other, and there passed as amended. The constitution expressly recognizes this fact, and authorizes it to be done; but it does not require such bill as amended to be read three times in the house originating the bill before concurring in the amendments proposed by the other (*State* v. *Hocker,* 36 Fla. 358, 18 So. 767), nor does it require the vote on the adoption of the amendments to be taken by yeas and nays, and entered on the journal. The clause quoted was framed in view of parliamentary practice, as is evident from the use of the terms 'first and second readings' and 'final passage,' and its object was to regulate the number of readings to which the bill should be subjected in each house, and to require the vote to be taken by yeas and nays, and entered upon the journals upon the passage of the bill after such readings. Such has been the legislative construction of the provision in question for many years, and we are satisfied that construction is correct."

25 Ruling Case Law, page 882, section 129, comments on the disagreement among the cases as follows:

"In some jurisdictions it is held that the final passage of a bill, within the requirement that on a final

passage the vote must be by yeas and nays entered on the journal, is the passage or vote by which in its final form it becomes a law, and that any amendment to a bill must be voted upon by yeas and nays. But, according to what seems to be the preponderance of authority, the final passage of a bill is the vote by which each house adopts the bill after it has passed its third reading. Where a bill has been passed in one house and amended and passed in the other, the vote on the adoption of the amendment by the house in which the bill originated need not, under such a constitutional provision, be taken by ayes and noes and entered on the journal. In some states this question cannot arise, for it is expressly provided by the constitutions that amendments must be adopted by a yea and nay vote.''

The following cases hold that the ''final passage'' of a bill means the vote on third reading: *Johnson* v. *City of Great Falls*, 38 Mont. 369, 99 Pac. 1059, 16 Ann. Cas. 974; *Wilson* v. *Young County Hdw. & Furn. Co.*, (Tex. Civ. App.) 262 S. W. 873; *State* v. *Crowe*, 130 Ark. 272, 197 S. W. 4, Ann. Cas. 1918D 460, L. R. A. 1918A 567; *Brown* v. *Road Commissioners*, 173 N. C. 598, 92 S. E. 502; *McCulloch* v. *State*, 11 Ind. 424; *Hull* v. *Miller*, 4 Neb. 503; *East Jefferson Waterworks Dist. No. 1* v. *Caldwell & Co.*, 170 La. 326, 127 So. 739; *Brake* v. *Callison*, (C. C.) 122 Fed. 722; *School District No. 11, Dakota County, Neb.*, v. *Chapman*, (C. C. A.) 152 Fed. 887. The courts holding to the contrary are in the minority, as is shown by the prevailing opinion, and to my mind they substitute for the constitutional plan of enacting laws by the legislature, a court plan, for, whereas the Constitution clearly defines the ''final passage'' as the passage on the third reading of the bill, these courts say it is upon a concurrence in the amendment.

It is suggested by counsel for appellee that the adoption of this rule will permit the legislature to amend emergency bills, and I suppose also nonemergency bills, by a majority of a quorum of each house.

In other words, they say that a quorum of the house is 33, and that, if such quorum can as part of its business amend bills, it could amend by a vote of 17. Granting that this extreme illustration may be true, it is a situation created and fostered by the Constitution and not by the courts. I think, also, the possibility of the legislature doing its business by so small a percentage of its membership is more speculative than probable. At all events, the court is not a "big brother" of the other two departments of state, guiding or directing the affairs within their jurisdiction, but only a co-ordinate branch of the government. When the framers of the Constitution did not hamstring the legislature in the transaction of its business, why should this court do so?

It is said in *Johnson* v. *City of Great Falls, supra:*

"The construction given by the Legislature to those provisions of the Constitution dealing with legislative procedure is entitled to great weight."

It seems to me, in view of the probable litigation that will arise concerning the validity of numerous acts if we hold that the "final passage" of House Bill 146 was upon the concurrence in the amendments, and not at the third reading as provided in the Constitution, we should hesitate long and seriously before so deciding.

The unwillingness of this court in the past to interfere with the legislature cannot be better or more aptly illustrated than its attitude toward emergency measures. The Constitution, subdivision 3, section 1, part 1, article 4, provides that all acts passed by the legislature, "except laws immediately necessary for the preservation of the public peace, health, or safety, or for the support and maintenance of the departments of the State Government and State Institutions," shall be subject to the referendum. It has been since statehood the unvarying custom of the legislature to declare, at its pleasure, any and all

acts, regardless of the necessity for immediate operation, to be emergency measures. In *Orme* v. *Salt River Valley Water Users' Assn.*, 25 Ariz. 324, 217 Pac. 935, we said, speaking through Mr. Chief Justice McALISTER: "The Legislature itself is the judge of the existence of conditions requiring the immediate operation of an act." And we quoted in support of our conclusion from *Kadderly* v. *Portland,* 44 Or. 118, 74 Pac. 710, 75 Pac. 222, as follows:

"But, it is argued, what remedy will the people have if the Legislature, either intentionally or through mistake, declares falsely or erroneously that a given law is necessary for the purposes stated? The obvious answer is that the power has been vested in that body, and its decision can no more be questioned or reviewed than the decision of the highest court in a case over which it has jurisdiction. Nor should it be supposed that the Legislature will disregard its duty, or fail to observe the mandates of the Constitution. The courts have no more right to distrust the Legislature than it has to distrust the courts. The Constitution has wisely divided the government into three separate and distinct departments, and has provided that no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in the Constitution expressly provided. Const., art. 3, § 1. It is true that power of any kind may be abused when in unworthy hands. That, however, would not be a sufficient reason for one co-ordinate branch of the government to assign for attempting to limit the power and authority of another department. If either of the departments, in the exercise of the powers vested in it, should exercise them erroneously or wrongfully, the remedy is with the people, and must be found, as said by Mr. Justice STRAHAN in *Biggs* v. *McBride* [17 Or. 640, 21 Pac. 878, 5 L. R. A. 115], *supra,* in the ballot box."

In this pronouncement we not only refused to disturb an obvious violation of the Constitution by the legislature, and I think upon sufficient grounds, but

we said, in effect, because of the separate and independent powers of the different departments, we would not hold inquisitions upon acts of the legislature in the exercise of the powers vested therein.

In the present case there is no question of the very urgent necessity of the legislation contained in House Bill No. 146, and also of its immediate operation. It is of course known by all the people of the state that the counties and municipalities, and the state itself, are without funds to meet their obligations, and that, unless other sources of revenue than those we now have are resorted to, the expenses of the departments of state and public institutions and county governments cannot be met, and the state's credit will be destroyed. In the face of these conditions it would seem that, if we had any doubt as to the validity of the bill as an emergency measure, it should certainly be resolved in favor of its validity.

I am satisfied that this court, having put its seal of approval on the enrolled bill doctrine, should adhere thereto. Some of the great courts of the country have adopted that rule, among them the Supreme Court of the United States. The eleventh legislature, and all others since statehood, had the right to rely upon the solemn judgment of this court in the Allen case.

In *Boyd* v. *Olcott,* 102 Or. 327, 202 Pac. 431, the court says:

"Some courts treat an enrolled bill as an absolute verity, and will not look beyond the enrolled bill to the legislative journals or to other evidence to ascertain whether the bill has been regularly enacted. This view is frequently mentioned as the enrolled bill rule. It has always been the rule in England. The Supreme Court of the United States has adopted the enrolled bill rule. The current of judicial opinion has been steadily turning towards this rule during the last decade, for in nearly every jurisdiction where the question has, within the last 10 years, presented

itself as one of first impression, the courts have adopted the enrolled bill rule. Some courts have adhered to the journal entry rule only because fettered by their own precedents. Other courts have repudiated their own precedents, have receded from the journal entry rule, and have adopted the enrolled bill rule. The following are some of the precedents approving the enrolled bill rule: *Field* v. *Clarke,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294. [Here follows a number of cases from different states, including the case of *Allen* v. *State, supra.*]''

I am further satisfied that, if recourse be had to the House Journal, it shows the bill received two-thirds of the votes of the membership of that body on ''final passage.'' While the Constitution is particular that emergency measures be passed by two-thirds of the membership of each house and ordinary measures by a majority of such membership, it is equally particular in prescribing that such ''final passage'' shall be on the third reading of the bill, section by section. Because such a constitutional rule does not appeal to us as reasonable is no ground for setting it aside or refusing to apply it.