[No. 2260.]

Dawney Hunt *v.* The State.

[No. 2329.]

Charles Hadley *v.* The State.

[No. 2261.]

Lou. Lestarjette *v.* The State.

1. Constitutional Provisions are absolutely mandatory, and can in no case be regarded as directory merely, to be obeyed or not within the discretion of either or all of the departments of the government. See the opinion *in extenso* for an elaboration of the doctrine, and for a review of the authorities pro and con.

2. Practice—Interpretation of the Codes.—In determining the validity of a statute, assailed upon the ground that its enactment was not in conformity with some express requirement of the Constitution, the courts of this State are not confined to the verity usually imported on the face of the statute, if prima facie valid, but may go behind it to ascertain if the express requirement of the Constitution was observed in its enactment.

3. Same.—Section 38 of Article 3 of the Constitution of this State provides as follows: "The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the Legislature, after their titles have been publicly read before signing; and the fact of signing shall be entered on the journals." *Held*, that the effect of this section of the Constitution is to expressly and imperatively require the presiding officer of each house to sign every enactment in the presence of the body over which he presides, and after it has been read by caption, and that the fact of signing shall be entered upon the journals; and, in order to determine whether such requirements of the Constitution were complied with, the courts are authorized to go behind the statute itself, and ascertain the facts from the journals. See the opinion on the question.

4. Same—Constitutionality of a Statute.—The Act of March 19, 1885, (Gen. Laws Nineteenth Leg., p. 34), amendatory of Article 358 of the Penal Code, which prescribes the penalty for the offense of keeping and exhibiting a gaming bank, is unconstitutional, because the journals of the Senate fail to disclose its proper signing, in open session, by the presiding officer of that body.

APPEAL from the County Court of Tarrant. Tried below before the Hon. Sam Furman, County Judge.

The conviction in each of these cases was for exhibiting a gaming bank, and the penalty assessed in each case was a fine of twenty-five dollars, and confinement in the county jail for ten days. The transcripts bring up no statements of facts.

*W. S. Pendleton* and *B. G. Johnson,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. These are convictions for keeping and exhibiting a gaming bank, and the punishment assessed in each case is fine and imprisonment under and by virtue of the act of March 19, 1885 (Gen. Laws Nineteenth Leg., p. 34), amendatory of Article 358 of the Penal Code; which act enlarges the punishment for said offense by adding to the punishment by fine, as prescribed by said article 358, the punishment of imprisonment in the county jail.

The question presented for our determination is the validity of this said act of March 19, 1885. It is contended by defendants that said act is invalid, because it was not enacted in conformity with Section 38, Article 3, of the Constitution, which reads as follows: "The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the Legislature, after their titles have been publicly read before signing; and the fact of signing shall be entered on the journals." It is asserted that this provision was disregarded by the Legislature in that the fact of the signing of this bill by the presiding officer of the Senate was not entered upon the journals of the Senate. The truth of this assertion is unquestionably established by reference to said journals, and if such omission can be noticed by the court, and invalidates the act, then said act is void, and these convictions must be set aside.

In considering the subject, we think it necessary to first determine whether, in the construction of the organic law, we may, as we might in the construction of a statute, apply the distinction between *directory* and *mandatory* provisions, or whether we must construe all provisions of the organic law to be *mandatory.* There is considerable conflict of decisions upon this point. In

support of the doctrine that courts are at liberty to hold, under the rules governing the construction of statutes, a constitutional provision to be merely directory, the leading case perhaps is that of Miller v. The State, 3 Ohio St., 483. With reference to the question under consideration, the decision referred to is *obiter*, the case not calling for a discussion of the subject. In a subsequent case, however, decided by the same court, the views announced in the Miller case were affirmed. (Pim v. Nicholson, 6 Ohio St.) And it may be said to be the settled rule in Ohio that it is not every provision of the Constitution that is mandatory. In New York the same rule has been adopted (People v. Supervisors of Chenango, 8 N. Y., 328); also in California (Washington v. Murray, 4 Cal., 388); and in Mississippi (Hill v. Boyland, 40 Miss., 618; Swann v. Buck, 40 Miss., 268); and in Missouri (Cape Girardeau v. Riley, 52 Mo., 424; St. Louis v. Foster, Id., 513); and in Maryland (Pherson v. Leonard, 29 Md., 377), and perhaps in some other States.

But notwithstanding these decisions are by able courts, the great weight of authority seems to be the other way, holding that the courts nor any other department of the government are at liberty to regard any provision of the Constitution as merely directory, but that each and every of its provisions must be treated as imperative and mandatory, without reference to the rules distinguishing between directory and mandatory statutes. Judge Cooley, in his great work on Constitutional Limitation, upon this subject says: "The courts tread upon very dangerous ground when they venture to apply the rules which dististinguish directory and mandatory statutes to the provisions of a constitution. Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the things to be done; and they must then be regarded in the light of limitations upon the power to be exercised. It is the province of an instrument of this solemn and permanent character to establish those fundamental maxims, and fix those unvarying rules by which all departments of the government must at all times shape their conduct; and if it descends to prescribing mere rules of order in unessential matters, it is lowering the proper dignity of such an instrument and usurping the proper province of ordinary legislation. We are not, therefore, to expect to find in a Constitntion provisions which the people, in adopting it, have not regarded as of high importance, and worthy to be embraced in an instrument which,

for a time at least, is to control alike the government and the governed, and to form a standard by which is to be measured the power which can be exercised as well by the delegate as by the sovereign people themselves. If directions are given the times or mode of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only; and we impute to the people a want of due appreciation of the purpose and proper province of such an instrument, when we infer that such directions are given to any other end; especially when, as has been already said, it is but fair to presume that the people in their Constitution have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, and with a view to leaving as little as possible to implication." (Pp. 94, 95.)

In referring to decisions holding a contrary doctrine to his text above quoted, the author says: "There are some cases, however, where the doctrine of directory statutes has been applied to constitutional provisions; but they are so plainly at variance with the weight of authority upon the precise points considered that we feel warranted in saying that the judicial decisions, as they now stand, do not sanction the application." (Id., 95.)

In our own State we know of no instance in which a constitutional provision has been held to be directory merely. This court has more than once held that constitutional provisions are always mandatory, and has adopted the doctrine laid down by Judge Cooley, which we have quoted above. (Cox v. The State, 8 Texas Ct. App., 254; Holly vs. The State, 14 Texas Ct. App., 505.) We believe this to be the sound and only safe doctrine. It seems to us that the rule which gives to the courts and other departments of the government a discretionary power to treat a constitutional provision as directory, and to obey it or not, at their pleasure, is fraught with great danger to the government. We can conceive of no greater danger to constitutional government, and to the rights and liberties of the people than the doctrine which permits a loose, latitudinous, discretionary construction of the organic law. "We are taught by the Constitution itself that those who administer this government are divided into three co-ordinate departments; each of these can only act within its own limited sphere, and they, respectively, are the servants of the sovereign power, the people. There is no power above the people. There is no discretionary power granted in

the Constitution for either of these departments, nor for all of them united, to exercise a discretionary expansion and flexible power against its rigid limitations even though such limitations were imposed by improvident jealousy. If abuse exist by reason of defects in the Constitution, present or prospective, the true source of authority, the people, have the power, and doubtless the wisdom and patriotism to correct them; and this, in the American idea, is the safe and only depository." (Potter's Dwarris on Stat. & Const., p. 665.)

And here we deem it proper to again use the language of Judge Cooley. He says: "Whatever constitutional provision can be looked upon as directory merely, is very likely to be treated by the Legislature as if it was devoid of even moral obligation, and to be therefore habitually disregarded. To say that a provision is directory seems, with many persons, to be equivalent to saying that it is not law at all. That this ought not to be so is conceded; that it is so, we have abundant reason and good authority for saying. If, therefore, a constitutional provision is to be enforced at all, it must be treated as mandatory. And if the legislature habitually disregards it, it seems to us that there is all the more urgent necessity that the courts should enforce it. And it also seems to us that there are few evils which can be inflicted by a strict adherence to the law, so great is that which is done, by the habitual disregard, by any department of the government, of a plain requirement of that instrument from which it derives its authority, and which ought, therefore, to be scrupulously observed and obeyed." (Const. Lim., p. 183.)

Upon the weight of authority, and, to our minds, upon the soundest of reasons, we conclude that the provision of the Constitution under consideration, and all other provisions of our Constitution, are mandatory and can in no case be regarded as directory merely, to be obeyed or not within the discretion of either, or all of the departments united, of the government.

We will next consider whether, and to what extent, the courts may inquire into and determine the validity of a statute which upon its face purports to be a valid law, but which is attacked as invalid because the Legislature, in enacting it, did not conform to the requirements of the Constitution. Upon this subject, also, there is much contrariety and conflict of authority. Judge Cooley says: "Each house keeps a journal of its proceedings, which is a public record, and of which the courts are at liberty to take judicial notice. If it should appear from these journals

that any act did not receive the requisite majority, or that in respect to it the Legislature did not follow any requirement of the Constitution, or that in any other respect the act was not constitutionally adopted, the courts may act upon this evidence and adjudge the statute void. But whenever it is acting in the apparent performance of legal functions every reasonable presumption is to be made in favor of a legislative body; it will not be presumed in any case, from the mere silence of the journals, that either house has exceeded its authority or disregarded a constitutional requirement in the passage of legislative acts, unless where the Constitution has expressly required the journals to show the action taken, as, for instance, where it requires the yeas and nays to be entered." (Const. Lim., p. 164.)

In the instance we are considering the Constitution *expressly* requires that the journals shall *show the fact of the signing of the bill by the presiding officer of each house,* etc. This is an imperative requirement and as plain as the English language could make it. As we understand the rule stated in the quotation just made the fact of such signing of the bill *must* appear from the journals. Such fact can not be presumed, or established by any other evidence, while the journals are in existence, because the Constitution expressly requires the journals to show the fact, and thereby, as long as said journals exist, makes them the best, the only and the conclusive evidence of the fact. If there was not an express requirement that the journals should show the fact of signing, then the mere silence of the journals as to such signing would not affect the validity of the statute, because in such case the legal presumption would prevail that the bill had been signed in the manner required.

The distinction between cases in which the law will presume that all the requirements of the Constitution have been observed in the enactment of a statute, and those in which such presumption can not be entertained, is very clearly stated by Judge Stone in Perry v. Railroad Company, 58 Alabama, 546, as follows: "We think the only safe rule for interpreting clauses of the Constitution which command certain things to be done, or certain methods to be observed in the enactment of statutes, is to hold that when it is affirmatively shown by legal evidence that, in the attempt to legislate, some mandate of the Constitution has been disregarded, such attempt never becomes a law. We do not mean to be understood as affirming that in all cases the silence of the journal proves some constitutional requirement

was omitted. It is only when the Constitution requires that certain things shall be spread on the journal that its silence affects the constitutionality. The presumption, in the absence of proof, is always in favor of official propriety; and, except as to those matters which the Constitution declares shall appear in the journal, the rule is to infer everything was rightly done, unless the journal shows affirmatively that some constitutional command was disregarded."

The same able court, through the same judge, in a previous case in which the constitutionality of a statute was assailed upon the ground that the yeas and nays upon its passage had not been entered upon the journals as required by the Constitution, used the following language: "The inquiry naturally presents itself, what intendments, if any, are to be indulged for or against the constitutionality of legislative enactments? On the question of the yeas and nays required to be spread on the journal, there can be no reasonable ground for doubt. The journal is the record which the Legislature keeps, and is required to keep, of its proceedings. Like all other records required by law to be kept, it imports verity. Taking into account the character of the body whose record it is, a co-ordinate department of the government, we hold that it imports absolute, indisputable verity. The Constitution, then, requiring that the yeas and nays shall be matter of record, no other evidence can be received of this requirement, nor can its want be supplied by intendment. Of this fact the record (journal) must speak, and, if silent, the fact in legal contemplation does not exist." (State v. Buckley, 54 Ala., 599.)

In Spangler v. Jacoby, 14 Ill., 297, it is said: "In our opinion it is clearly competent to show from the journals of either branch of the Legislature that a particular act was not passed in the mode prescribed by the Constitution, and thus defeat its operation altogether. The Constitution requires each house to keep a journal, and declares that certain facts, made essential to the passage of a law, shall be stated therein. If those facts are not set forth, the conclusion is that they did not transpire. The journal is made up under the immediate direction of the house, and is presumed to contain a full and complete history of its proceedings. If a certain act received the constitutional assent of the body, it will so appear on the face of its journal. And, when a contest arises as to whether the act was thus passed, the journal may be appealed to to settle it. It is the evi-

dence of the action of the house, and by it the act must stand
or fall.   It certainly was not the intention of the framers of the
Constitution that the signatures of the speakers and the execu-
tive should furnish conclusive evidence of the passage of a law.
The presumption indeed is, that an act thus verified became a
law pursuant to the requirements of the Constitution, but that
presumption may be overthrown.   If the journal is lost or
destroyed, this presumption will sustain the law, for it will be
intended that the proper entry was made on the journal.   But
when the journal is in existence, and it fails to show that the
act was passed in the mode prescribed by the Constitution, the
presumption is overcome, and the act must fall."

We could quote from many other authorities to the same effect,
but it would not be profitable to do so.   We conclude that the
weight of authority is with the text and decisions we have
quoted, and that, in a case like the one before us, where the con-
stitution expressly requires, in the enactment of a statute, that
certain facts shall be entered upon the journals, the courts will
look behind the statute to the journals, and ascertain if such
entry was made; and if the journals fail to show affirmatively
that such entry was made, the statute will be held void.

This conclusion is in opposition to the views expressed by our
Supreme Court in Blessing v. City of Galveston, 42 Texas, 641, and
to views of this court as expressed in Usener v. The State, 8
Texas Court of Appeals 177.   In both the cases named the con-
clusion seems to be that the courts will not look behind a statute
which upon its face is valid, which has been signed by the proper
officers of each house, approved by the Governor, and filed in the
office of the Secretary of State, to ascertain whether or not the
statute was enacted in conformity with the requirements of the
Constitution, but will conclusively presume that all the require-
ments of the Constitution with regard to the passage of the stat-
ute were observed and obeyed.   In support of this view, in the
Blessing case but one authority is cited, that being Miller v. The
State, 3 Ohio State, 483, which opinion, as we have already
observed, is not only *obiter,* but is at variance with the great
weight of authority.

In Usener's case, *supra,* the Blessing case is cited in support
of the opinion; also Panghorn v. Young, 32 New Jersey, Law,
29; The State v. Swift, 10 Nevada, 176; Sherman v. Story, 30
California, 253, and Miller v. The State, 3 Ohio State, 483.   The
opinion in the Usener case is *obiter,* the court holding that in

fact the provision of the Constitution in question had been fully complied with. In neither the Blessing nor Usener case is the distinction between a constitutional provision which expressly requires an entry of a fact concerning the passage of a statute to be entered upon the journals, and a provision which contains no such express requirement, discussed or noticed. In regard to the latter character of provision, these decisions are unquestionably correct, but with respect to provisions of the former character we can not agree to the apparently unqualified, unlimited rule therein announced; nor do we believe that either of the courts delivering those opinions would have so held had the precise question now before us been called to their attention, or so presented as to demand thorough investigation. We are unwilling to adhere to and affirm the broad language of those opinions, although they are not only good authority themselves, but are supported by the decisions of other courts of high authority. We can not approve the policy and wisdom of the doctrine they announce, because we believe it to be contrary to the spirit and genius of a constitutional government, and, as we have before said, dangerous to the rights and liberties of the people. It is the plainly expressed will of the people that each house of the Legislature shall keep a journal, and in those journals *shall* be entered the fact of the proper authentication of the enactment of statutes. We regard this as a prudent and wise requirement, but, whether it be so or not, it is the mandate of the sovereign power of the State and should, and in our opinion *must*, be obeyed before any bill can become a law.

We hold, therefore, that we may and should look behind the enrolled act, to the journals of the houses, and inquire whether or not this provision of the constitution has been obeyed in the enactment of the statute. Finding that it has not been obeyed, we hold that the act of March 19, 1885, amendatory of Article 358, of the Penal Code, never became a law, and is void. This being the case, these convictions must be set aside. Article 358, of the Penal Code, is in no way affected by said act, but is still in full force and effect, and the punishment therein prescribed for the offense of which defendants have been convicted may, upon trials of these cases hereafter had, be meted out to these alleged offenders.

The judgments are reversed and the causes are remanded for new trials.    *Reversed and Remanded.*