### Ex Parte Barney May.

No. 14582.   Delivered June 27, 1931.

*Frank H. Rawlings,* of Fort Worth, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—This is an original application for a writ of habeas corpus.

It is claimed that Barney May is illegally restrained under a warrant issued by virtue of a complaint charging in terms a violation of one of the provisions, namely, section 3c of the Acts of the 42nd Legislature, Regular Session, embraced in House Bill No. 336; that his restraint is illegal for the reason that the act of the Legislature in question is not in force as a statute of the state due to the fact that ninety days have not elapsed since the adjournment of the Legislature at which the act was passed, said bill, in its enactment, not having received the requisite vote to bring it into immediate operation under the provisions of article 3, section 39, of the Constitution of this state, which reads as follows:

"No law passed by the Legislature, except the general appropriation act, shall take effect or go into force until ninety days after the adjournment of the session at which it was enacted, unless in case of an emergency, which emergency must be expressed in a preamble or in the body of the act, the Legislature shall, by a vote of two-thirds of all the members elected to each House, otherwise direct; said vote to be taken by yeas and nays, and entered upon the journals."

Article 3, section 32, reads thus:

"No bill shall have the force of a law, until it has been read on three several days in each House, and free discussion allowed thereon; but in cases of imperative public necessity (which necessity shall be stated in a preamble or in the body of the bill) four-fifths of the House, in which the bill may be pending, may suspend this rule, the yeas and nays being taken on the question of suspension, and entered upon the journals."

The legislative practice, in compliance with article 3, sec. 32, supra, is as follows: A bill is introduced and read by its caption. It is then referred to a committee. This is the first reading. Upon the committee's report the bill is read and by a vote passed to engrossment. This is the second reading. Thereafter, by a vote, it is passed to the third reading, which term, as used, is synonymous with final passage. After passing to the third reading in the house in which the bill originates, it is sent to the other branch of the Legislature and there goes through the same process as above described. A bill in either branch may be amended, but before the bill becomes a law the amendments must have the sanction of both branches of the Legislature. The term "final pas-

sage" of a bill, as found in some of the decisions and possibly in some of the constitutions of other states, is not mentioned in the articles of our Constitution quoted above.

House Bill No. 336 was passed upon the third reading in the House. On its passage in the Senate a number of amendments were adopted making material and somewhat radical changes in the effect of the bill. The House declined to concur in the amendments. The bill, with said amendments, was referred to a free conference committee, which committee, after consideration, reported to each branch of the Legislature the recommendation that Bill No. 336 do not pass but that "the following substitute bill, do pass in lieu thereof." The committee's substitute bill, that is, the bill prepared by the free conference committee, differed in many particulars from the bill as it pased out of each of the branches of the Legislature. The report of the free conference committee carrying the substitute bill was adopted in the House upon a record vote of less than two-thirds majority of the elected members, and was adopted in the Senate by a viva voce vote without a record vote. It is understood to have been permissible under the rule, after the procedure required by article 3, sec. 32 of the Constitution had been followed, for each branch of the Legislature to adopt the free conference committee report in lieu of all former measures as embracing the views of both the House and the Senate. It is conceived that when the House and Senate adopted the free conference committee report, the law would become effective ninety days after adjournment under article 3, section 39 of the Constitution, unless at the time, with the knowledge of the contents of the bill as it then stood, the House and Senate, by a record vote of each showing concurrence of two-thirds of all the members of each branch, directed otherwise.

In some of the text-books and decisions, it is stated that the precedents are in conflict touching the time at which a vote may be taken fixing the date at which a law may be effective. See Ruling Case Law, vol. 25, p. 881, sec. 129, and the following cases: State v. Crowe, 130 Ark., 272, 197 S. W., 4, L. R. A., 1918A, 567; Johnson v. Great Falls, 38 Mont., 369, 99 Pac., 1059, 16 Ann. Cas., 974. See also Cohn v. Kingsley, 5 Idaho, 416, 49 Pac., 985, 38 L. R. A., 74; Norman v. Kentucky Board of Managers, 93 Ky., 537, 20 S. W., 901, 18 L. R. A., 556.

In some of the decisions reference is made to other cases, but an examination of them reveals that they only incidentally touch the subject. The conflict of authority is more because of a diversity in facts and in the language of the controlling constitutional provisions. However, in the opinion of the writer, the better reasoning is that given by the Supreme Court of Kentucky in the case to which reference is made above.

It is conceived that while the terms of the bill when it passed the

third reading might invoke a majority requisite to put it into immediate effect, it might be subsequently so changed before final pasage as to bring about a different view in the minds of many of the members of the law-making body, as is illustrated in the present instance.

In this state there appears but one case dealing with the subject in hand, namely, Wilson v. Young County Hardware & Furniture Co, 262 S. W., 873. In that case, the Court of Civil Appeals stated that the majority rule was in favor of that applied in the Montana case above cited.

The Texas case mentioned, however, cannot be regarded as conclusive authority upon the subject for the reason that the decision of the question was admittedly not necessary to the disposition of the appeal. The inquiry was whether the passage of a certain law with reference to the transfer of cases was in effect under the emergency clause, and after discusing the subject the court, in the fourth and concluding paragraph make the announcement showing that the question therein previously discussed was purely academic. We quote from said case as follows:

"Moreover, at the time the judgment against appellant was entered by the justice court of precinct No. 4 in Montague County, to wit, on September 19, 1922, more than 90 days had elapsed since the adjournment of the regular session of the Thirty-seventh Legislature. Since the appellant was served with citation in garnishment of the suit filed in Young County, and since, as we have before shown, the transfer of the case from the justice court of Young County to the justice court of Montague County carried with it the garnishment proceeding also, certainly no question can be raised that at the time of the judgment against appellant in Montague County the amendment to the statute was not in full force and effect."

So far as we are aware, the present is the first occasion upon which this court has been called upon to decide a similar question, and the only instance in which the decision is essential to the disposition of such controversy. The question, therefore, is regarded, so far as this state is concerned, an open one.

The case of Norman v. Kentucky Board of Managers, supra, is one in which the question at issue arose. The Constitution of Kentucky contained a provision substantially like the one embraced in the Constitution of this state. An act originated in the Senate and was passed upon by a yea and nay vote with the requisite majority. It went to the House of Representatives, and after amendment was passed with a like majority. It came back to the Senate where concurrence was made in the amendments without a yea and nay vote and without the requisite majority of the members elected. The court said:

"The object of the section above cited was to have the assent of a majority of all the members elected to each House to *all* the provisions

of the act, and that this should appear by a yea and nay vote entered upon its journal. If a bill, after passing one House in the proper manner and then, after amendment, passing the other House in like manner, could come back to the House in which it originated and be adopted by a majority of those voting, or a quorum, it would defeat this object, and render the section ineffectual.

"It is true it has been held that the 'final passage' of a bill means when it first passes the body, and not when it returns to it, after amendment, for adoption; and it is said that the constitutional provision as to the number of votes, and the entry of the yea and nay vote on the journal, does not apply to amendments, or the reports of conference committees. If so, then no matter how material the change, a majority vote of a quorum may pass the bill. The words 'final passage', as used in our Constitution, mean final passage. They do not mean some passage before the final one, but the last one. They do not mean the passage of a part of a bill, or what is first introduced, and which may by reason of amendment become the least important."

A somewhat similar question arose in the case of Cohn v. Kingsley, supra, in which the court, holding a bill void for non-compliance with the constitutional requirements, quoted from Sutherland on Statutory Construction, sec. 79, as follows:

"The efficiency of this constitutional remedy to cure the evil and mischief which has been pointed out depends on judicial enforcement; on this constitutional injunction being regarded as mandatory, and compliance with it essential to the validity of legislation."

In some of the decisions there are suggested many evils that might flow from an evasion of the provision of the Constitution in question, and reasons assigned for giving it adherence. A recital of them is pretermitted. It seems enough to say that a reasonable and logical interpretation of the controlling provision of the Constitution of this state confers upon the Legislature both the power (by a record vote with majority of two-thirds of the members of each house) to change the time within which an act of the Legislature may ordinarily become effective, and requires that they exercise such authority and power at the time when they become aware of the terms of the law as finally agreed upon. Previous action upon a bill in its initial stages, before material and radical changes have been made, would not control.

The Regular Session of the Forty-second Legislature adjourned on the 23rd day of May, 1931. The arrest of the relator was made on the 22nd day of June, 1931.

From what has been said it follows that it is the view of this court that the detention of the relator is upon a law which has not yet become

effective and that his arrest and detention are unauthorized. It is therefore ordered that he be discharged from custody.

*Discharged.*