## LONGMIRE v. TAYLOR et al.
### No. 13588.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 10, 1937.

Rehearing Denied Oct. 22, 1937.

C. A. Wright, of Fort Worth, for appellant.

Todd, Crowley & Thompson, of Fort Worth, for appellee James T. Taylor.

Leo Brewster, of Fort Worth, for appellee Paul Gilven.

SPEER, Justice.

This suit was originally instituted in a district court of Tarrant county by A. L. Lott against Paul Gilvin for title and possession of certain machinery. The defendant Gilvin interpleaded Albert Davis, and Davis thereafter made James T. Taylor a party, and Taylor made the Union Bank & Trust Company, Red Longmire, and George M. Longmire cross-defendants, alleging that they claimed some rights in the property, but that such rights were inferior to his claims. The foregoing general statement is taken from the brief of Taylor, and is not controverted by Longmire. There is a stipulation in the transcript to the effect that the original plaintiff, Lott, was dismissed at his request from the suit, and that the Union Bank & Trust Company and other interpleaded parties, having filed disclaimers, were likewise dismissed, and that the pleadings filed by them were not essential to this appeal, and were omitted from the record.

The interpleaded defendant, James T. Taylor, answered generally and plead in cross-action against Paul Gilvin for debt evidenced by a promissory note of about $600 with accrued interest, and for a foreclosure of a chattel mortgage lien on the machinery involved in the original suit as against all parties original and cross-defendants.

George M. Longmire answered Taylor's cross-action by an allegation that he was the real owner of the machinery in question, having purchased it at constable's sale under execution upon a judgment in justice court of precinct No. 1, Tarrant county, Tex., which suit was instituted prior to the date Taylor claimed to have acquired the mortgage sought to be foreclosed. That the suit in the justice court, under which he claimed, was instituted by the Red Longmire Welding Company, a copartnership composed of C. C. Longmire and W. B. Longmire, against Paul Gilvin; that said judgment was for $52.60 and costs of suit, and a foreclosure of a chattel mortgage lien on the machinery in controversy; that execution was issued on that judgment and levied upon the machinery, properly advertised and sold by the constable to him, he being the highest bidder at said sale; that upon payment of the amount of his bid the constable executed and delivered to him a bill of sale to certain of the machinery. It is not clear to us whether or not all the machinery covered by Taylor's alleged chattel mortgage lien is covered by the claim of Longmire; yet, as we view it, it is unnecessary for us to here determine that fact.

Taylor replied to the pleadings of George M. Longmire by allegations to the effect that the judgment of the justice court, under which the property was sold to Longmire, was void, and that no title passed to Longmire under the constable's sale. It was claimed that the justice court judgment was not final, for the reason that within the time prescribed by law the original defendant, Paul Gilvin, had applied for and procured a writ of certiorari in said cause to the county court of Tarrant county, attaching to his pleadings a copy of the application. Taylor filed a like plea, and both prayed the claim of Longmire be abated until the writ should be finally determined. Longmire filed a general demurrer to the pleas in abatement; the court properly overruled the demurrer, but the action is assigned as error; the ruling, however, becomes unimportant, since no proof was made upon the hearing that the application for certiorari was perfected and a writ issued; like other matters above mentioned, this question is immaterial on this appeal. Taylor further answered Longmire's cross-action by alleging the judgment, under which Longmire claimed to have purchased the property, was void for the reason the justice court was without jurisdiction to render the judgment of foreclosure against the property which was worth much more than $200, and that there was no allegation in said court as to the value of the property upon which a lien was foreclosed, nor was it there alleged that the property was worth $200 or less, and for these reasons any judgment rendered in said cause was void for lack of jurisdiction in the court, and that the sale under execution at which Longmire became the purchaser passed no title.

The issues were thus made and the case proceeded to trial before a jury with virtually the only interested parties being James T. Taylor, though named as a defendant, assuming the role of a plaintiff against George M. Longmire, defendant, whose de-

fense, as we have seen, consisted of an effort to prevent Taylor from foreclosing a lien on the property claimed to have been acquired by him under purchase at the constable's sale.

Under rulings of the court, testimony was offered by Taylor that the property foreclosed upon in the justice court case was of value far in excess of the maximum jurisdiction of that court, and by oral testimony he proved that there were no allegations, oral or otherwise, as to the value of the property against which a lien was claimed. Special issues were submitted to the jury in response to which it was found: (1) That the value of the property upon which the lien was foreclosed in the justice court was $700; (2) when Longmire purchased the property at constable's sale he had knowledge of the pendency of the suit in the justice court (we assume this issue was submitted because of the allegations of the application for certiorari to the county court); (3) there were no pleadings in the justice court showing the value of the property upon which a lien was foreclosed. There were other matters of fact determined, such as the amount of expenditures made by Longmire on the property after purchase by him and prior to judgment in the case at bar, and that Longmire purchased the property at constable's sale jointly with plaintiffs, C. C. and W. B. Longmire, in the justice court, none of which findings we believe are material in this appeal.

Upon these answers the court rendered judgment for James T. Taylor for his debt against Gilvin and a foreclosure of his chattel mortgage lien against all defendants, including George M. Longmire specifically, decreeing the judgment in justice court to be void, and that Longmire acquired no title at the sale by the constable thereunder.

■ From the judgment rendered, George M. Longmire alone has appealed. Twenty-two assignments of error are presented, practically all of which complain in one form or another of the action of the court in holding the justice court judgment void, and in the view we take of the record we shall consider all assignments on this point together. Certain assignments challenge the action of the court in overruling the general demurrer to the plea in abatement; but, as above indicated, we do not believe there was error committed in overruling the general demurrer, even if the plea in abatment was insufficient, since the allegations were not proven no harm is

shown to have arisen from this ruling of the court.

We believe there was reversible error committed by the learned trial court in admitting extrinsic testimony of the allegations made in the justice court case, the submission to the jury as to what was there plead, and in rendering judgment declaring that judgment void.

For convenience, we shall refer to George M. Longmire as appellant, and to James T. Taylor as appellee.

■ This suit, as we have seen, originated in the district court, and the judgment relied upon by appellant, as the basis for the sale under which he purchased the property in controversy, was in the justice court of precinct No. 1, and the attack made by appellee on that judgment cannot be considered other than as collateral. Of course, if the judgment was void, it could thus be attacked. For indeed, a void judgment does not bind anybody and need not be recognized any time or anywhere; but there is a well-recognized principle of law in this state that a judgment regular on its face, rendered by a court of general jurisdiction, is entitled to absolute verity, and is not subject to collateral attack. Scudder v. Cox, 35 Tex.Civ.App. 416, 80 S.W. 872 (writ refused); Newman v. Mackey, 37 Tex.Civ. App. 85, 83 S.W. 31 (writ dismissed); Brooks v. Powell (Tex.Civ.App.) 29 S.W. 809 (writ refused); Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325; Galbraith v. Bishop (Tex.Com.App.) 287 S.W. 1087, 1089; Southern Ornamental Iron Works v. Morrow (Tex.Civ.App.) 101 S.W.(2d) 336 (writ refused), and authorities there cited.

■ The resistance urged by appellee against the effect of the justice court judgment, under which appellant claims, clearly amounted to a collateral attack thereon. In Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325, 327, our Supreme Court has set out a very definite test of whether or not an attack on a judgment is a collateral one. It is there said: "A collateral attack on a judgment is an attempt to avoid its binding force in a proceeding not instituted for one of the purposes aforesaid, [the court's definition of a direct attack] as where, in an action for debt on a judgment, defendant attempts to deny the fact of indebtedness, or where, in a suit to try title to property, a judgment is offered as a link in the chain of

title, and the adverse party attempts to avoid its effect."

The last illustration named is applicable to the type of attack made in this case. Our courts have likewise adopted a similar definition laid down by Black on Judgments, vol. 1, § 252. See Ferrell-Michael, etc. v. McCormac (Tex.Civ.App.) 184 S.W. 1081, affirmed by Supreme Court, 215 S.W. 559.

█ It cannot be said this well-established rule is not applicable to judgments rendered by the justice courts of this state, because of the words "competent jurisdiction" and "general jurisdiction" sometimes employed by the courts in discussing it. The text of 25 Tex.Jur. p. 836, § 321, announces the recognized principle in Texas and concludes with the statement: "Because all the courts created by the constitution are courts of general jurisdiction within the respective fields allotted them. * * * So a judgment of a justice's court is protected from collateral attack by the same presumptions which apply in such contingencies to the judgments of courts of record."

On the same point last discussed in the case of Ferrell-Michael, etc., v. McCormac (Tex.Civ.App.) 184 S.W. 1081, 1088, affirmed by Supreme Court, 215 S.W. 559, this court said: "And in this respect there can be no difference between the judgments of the justice court and that of any other court of general jurisdiction."

█ The judgment of the justice court of precinct No. 1, of Tarrant county, which was held by the trial court in this case to be void, appears in the statement of facts and is regular in every way; it does not disclose a. lack of jurisdiction; and by that judgment, in a collateral attack such as the one under consideration, its validity must be determined. It could not be impeached by extrinsic oral testimony, or otherwise for that matter, in such an attack. The trial court permitted the introduction of oral testimony to show there were no allegations in the justice court of the value of the property upon which a lien was there foreclosed.

The rule last announced is not without some exceptions, but they are not applicable here. It is said in 25 Tex.Jur. p. 847, § 326: "It follows from what has been said in the preceding section that, generally speaking, evidence aliunde the record will not be received to prove the invalidity of a judgment attacked collaterally. The reason for this rule is that the law requires a party seeking to assail a judgment on jurisdictional grounds to proceed in one of the direct ways provided by the statutes; a solemn adjudication of a court of justice will not be allowed to remain forever open to impeachment in collateral proceedings by evidence of this kind. It follows that a judgment which might be proved to be absolutely void for lack of service upon the defendant, or other jurisdictional defect, by the use of this character of evidence will remain invulnerable so long as the defect does not appear in the record."

The case of Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325, 328, fully announces the rule. There a collateral attack was made on a judgment rendered against a party when no process had been served upon him, and the court said: "Logically, the judgment is, in fact, void, but on grounds of public policy, the courts, in order to protect property rights, apply the rule aforesaid, which precludes inquiry into facts dehors the record for the purpose of showing the invalidity of the judgment; and therefore, for all practical purposes, in such collateral attack, the judgment is held valid."

█ The authorities cited by appellee in support of the judgment rendered in this case are not applicable here. They uniformly hold that a justice court is without jurisdiction in a case where the amount sought to be recovered, as well as also the value of the property upon which the lien is to be foreclosed, are not shown to be within the jurisdictional limitations provided for such courts. They are cases in which the jurisdiction of the court, which rendered the judgment appealed from, was challenged. We have not had our attention called to an authority, nor have we been able to find one, which holds that a judgment regular on its face and not disclosing a lack of jurisdiction rendered by a constitutional court of this state may be successfully attacked in a collateral proceeding, as was attempted in this case.

We express no opinion here upon a question of the validity of the justice court judgment under which appellant claims, if properly attacked. That question is not before us.

The trial court erred in decreeing that the justice court judgment was void in this collateral attack, based upon the testimony admitted, and in disregarding the

rights of appellant acquired at a sale of the property under that judgment.

■ There is an assignment complaining of argument of counsel for appellee, but the same question will perhaps not arise upon another trial, since all of the courts have so often denounced inflammatory statements by counsel not supported by the record, yet they have been liberal to give counsel much latitude in making fair deductions from the testimony adduced.

■ In our opinion, this case was tried upon the wrong theory of law, and that the interests of all parties concerned, as well as the ends of justice to be attained in such matters, will be best served to reverse and remand the cause, rather than attempt to render a judgment in the case. Williams v. Safety Casualty Co. (Tex. Sup.) 102 S.W.(2d) 178, is authority for our order of reversal.

For the errors pointed out, the judgment of the trial court is reversed, and the cause remanded.