## ELLISON et al. v. TEXAS LIQUOR CONTROL BOARD et al.

### No. 11315.

Court of Civil Appeals of Texas. Galveston.

July 31, 1941.

Rehearing Denied Oct. 2, 1941.

'324

Rawlings & Sayers, Nelson Scurlock and Scott Daly, all of Fort Worth, and A. T. McKinney and Gordon M. Burns, both of Huntsville, for appellants.

Gerald C. Mann, Atty. Gen., Geo. W. Barcus, M. C. Martin, Fred Chandler, and Ocie Speer, Asst. Attys. Gen., and E. J. Miller, of Brownwood, for appellees.

CODY, Justice.

This suit was brought by appellants, plaintiffs below, to have declared unconstitutional, and to restrain the enforcement of the provisions of, House Bill No. 373 enacted by the Forty-Seventh Legislature, Vernon's Ann.P.C. art 666—15 (11, 18, 19). The suit was brought as a class suit for and on behalf of druggists in dry areas holding permits under the Texas Liquor Control Act, before the passage of House Bill No.373, to sell liquor for medicinal purposes, and for physicians. The Red Arrow Freight Lines, Inc., a common carrier, intervened in the suit attacking the provisions of House Bill No. 373 as unconstitutional which makes it unlawful for a carrier to hold or store liquor consigned to the holder of a medicinal permit for a longer period than seventy-two hours; the suit was brought against appellees, which include all law enforcement officers of the State as well as the Texas Liquor Control Board, its administrator and agents. The court below granted a temporary restraining order against the enforcement of the act, and thereafter the case was tried in the district court of Walker County before the Honorable Max Rogers, Judge thereof, who invited to sit and consult with him at the hearing the Honorable Charles G. Dibrell and Lex Smith, District Judges. The court rendered judgment for appellees, and the judgment shows that the temporary restraining order theretofore granted had expired by its own terms. The plaintiffs and intervenor have duly perfected their appeals to this Court. A temporary restraining order was by this court, on July 14, 1941, granted against the enforcement of the act during the pendency of the appeal.

The validity of the statute is attacked on these grounds: (1) That the act is an amendment of Section 15, Article 1, of the Texas Liquor Control Act, but, appellants contend, the Legislature failed to re-enact and publish at length the amended section as required by the Constitution; (2) that the caption of the act is misleading and deceptive and not germane to the subject thereof; (3) that the bill in the form in which it was signed by the Governor was not actually passed by both houses of the Legislature as required by the Constitution; (4) that the Legislature was without power to pass an act in the guise of a regulatory measure which imposes upon the people in dry areas more onerous burdens, penalties and forfeitures than existed at the time local option was adopted in such dry areas; and (5) that numerous provisions of the statute were invalid because they were unreasonable and discriminatory and deprived the plaintiffs and intervener of their constitutional and inherent rights.

■ It is the universal rule of construction of statutes, when their constitutionality is challenged, that they shall be construed, wherever possible and consistent with reason, so that they may be held to be constitutional. Eppstein v. State, 105 Tex. 35, 143 S.W. 144; Trustees of Independent School District v. Johnson County Democratic Executive Committee, 122 Tex. 48, 52 S.W.2d 71; Joliff v. State, 53 Tex.Cr. R. 61, 109 S.W. 176; Brown v. State, 57 Tex.Cr.R. 269, 122 S.W. 565; Joy v. City of Terrell, Tex.Civ.App., 138 S.W. 213, error refused. It will be borne in mind, without further reference in this opinion to said rule of construction, that in passing upon the points raised by this record, we are applying this rule.

The caption of the act, which appellants contend is misleading and deceptive and violative of Section 35, Article III, of the Constitution, Vernon's Ann.St. reads: "An

Act further regulating the prescribing of liquor for medicinal purposes and transportation, storage, and sale thereof, by amending Subsections (11) and (18) of Section 15, Article I, Chapter 467, Acts of the Second Called Session of the Forty-fourth Legislature, as amended by House Bill No.5, Acts of the Regular Session of the Forty-fifth Legislature, and by the addition of a new Subsection (19) to said Section 15, Article I; prescribing penalties; providing saving clause; and declaring an emergency."

The following portions of H.B.373 are quoted to show how subsections (11), (18), and (19) are tied into the Texas Liquor Control Act:

Section 1 of H.B.373, reads, in part, as follows:

"Section 1. That Subsection (18), Section 15, Article I, Chapter 467, Acts of the Second Called Session of the Forty-fourth Legislature, as amended by House Bill No. 5, acts of the Regular Session of the Forty-fifth Legislature, be further amended so as to hereafter read as follows:

" '(18) Medicinal Permits. The owner of a pharmacy properly qualified as a pharmacy * * *.' "

Section 2 of H.B.373 reads, in part, as follows:

"Sec. 2. Amend Section 15, Article I, Chapter 467, Acts of the Second Called Session of the Forty-fourth Legislature, as amended by House Bill No. 5, Acts of the regular Session of the Forty-fifth Legislature, by the addition of a new subsection (19), to read as follows:

" '(19) Physician's Permits. A physician licensed by the State Board of Medical Examiners, authorizing the administration * * *.'

"Sec. 3. Amend Subsection (11), Section 15, Article I, Chapter 467, Acts of the Second Called Session of the Forty-fourth Legislature, as amended by House Bill No.5, Acts of the Regular Session of the Forty-fifth Legislature, so as to hereafter read as follows:

" '(11) Carrier Permit. The word "carrier" when used in this Section shall mean and include water carriers, * * *.' "

Now when reference is had to H.B.No.5 of the Regular Session of the Forty-Fifth Legislature, Subsection (18), which it is the purpose and intention of Section 1 of H.B.373 to amend, is unmistakably identified; and the effect of H.B.373 is to amend said subsection (18) of H.B.No.5, by substituting in its place said subsection as it stands amended in H.B.No.373. In H.B. No.5, aforesaid, the subsection (18)—which is amended by Sec. 1 of H.B.373, aforesaid—is identified, exactly as referred to in and by said H.B.373.

What has been stated with reference to subsection (18) is equally true of subsection (11).

■ And when we refer back to the caption or title to H.B.373 it is seen that the title states the act is one amending subsections (11) and (18) of Section 15, Article I, Chapter 467, Acts of the Second Called Session of the 44th Legislature, as amended by H.B.No.5, Acts of the Regular Session of the 45th Legislature. It is difficult to think of language that would more clearly convey the meaning which is expressed by the words employed in said caption. We therefore overrule appellants' contention that the act is unconstitutional because of alleged violation of Section 35, Article III, of the Constitution.

Appellants contend that the act is void because it violates Section 36, Article III of the Constitution, which reads: "No law shall be revived or amended by reference to its title; but in such case the act revived, or the section or sections amended, shall be re-enacted and published at length."

■■ It is not meant by this provision that every act which amends the statutory law shall set out at length the entire law as amended. Under such a rule, legislation would in many instances be impracticable. " 'The practice which it was the purpose of the provision in question to prohibit was that of amending a statute by referring to its title, and by providing that it should be amended by adding to or striking out certain words, or by omitting certain language and inserting in lieu thereof certain other words. * * *' " Snyder v. Compton, 87 Tex. 374, 28 S.W. 1061, as approved and quoted in Clark v. Finley, 93 Tex. 171, 54 S.W. 343, 345. See also 59 C.J., p. 879, § 462. And subsection (18) and subsection (11), as amended and re-enacted and published at length as a part of H.B.373, comply with the requirements of Article III, Section 36, of the Constitution; and subsections (18) and (11) are *sections* within the meaning of said constitutional provisions. It is for convenience, and to avoid confusion, that said "sections" are termed by the Legislature "subsections".

It was not required by said constitutional provision, Section 36, Article III, that the Legislature re-enact and republish that portion of the Texas Liquor Control Act which is designated by the Act as Section 15 thereof, simply because "subsections" (11) and (18), which were amended and re-enacted and published at length, are identified and designated as "subsections (11) and (18) of Section 15, Article I, Chapter 467, Acts of the Second Called Session of the Forty-Fourth Legislature, as amended by House Bill No.5, Acts of the Regular Session of the Forty-fifth Legislature." As already stated, these "subsections" are *sections,* and if the Texas Liquor Control Act were codified, said "subsections" should be treated and designated as "articles". Henderson v. City of Galveston, 102 Tex. 163, 114 S.W. 108, 111, is not conflicting with the conclusions just expressed. In that case the court said: "It adds a provision to the existing section, and this, according to all authority, judicial or parliamentary, of which we know anything, is an amendment." But, again we repeat, subsections (11) and (18), and the added subsection (19), are themselves sections. No confusion can possibly result from the fact that the Legislature did not re-enact and publish at length all of the Act which is designated as "Section 15". Had the Legislature divided the Act into a "Title", "Chapters", and "Articles", no contention would be urged, we believe, with reference to amending subdivisions, which are equivalent to "Articles", if the entire chapter were not re-enacted. There is no magic in words or designations. The Legislature did not violate the Constitution merely because it designated sections as "subsections". See also Nobles v. State, 38 Tex.Cr.R. 330, 42 S.W. 978, cited in the Henderson case. Appellants' contention that section 36, Article III, of the Constitution was violated by the enactment of H.B.No.373 is overruled.

Appellants contend that H.B.373 is unconstitutional because, they allege, it was shown by the undisputed evidence that the bill as passed by the House of Representatives and passed by the Senate with "amendments", but the House refused to concur in such amendments; and that the bill was never returned to the Senate, and it, the Senate, did not pass the bill in its present form.

The "enrolled bill rule" is applied by the courts in Texas, which, as stated in Texas Jurisprudence, Vol. 39, p. 121, is as follows: "In the review of enactments, the Courts of Texas have long since adopted the so-called 'enrolled bill rule', to the effect that a duly authenticated, approved and enrolled statute imports absolute verity and is conclusive that the act was passed in every respect according to constitutional requirements. In other words, according to the settled rule an act passed by the Legislature, signed by the proper officers of each house, approved by the Governor, or passed notwithstanding, and filed in the office of the Secretary of State, constitutes a conclusive record of the passage of the act as enrolled. As against this record resort may not be had to a proclamation of the Governor, to the terms of the bill as originally introduced or amendments thereto, to the journal of the Legislature, nor to parol evidence for the purpose of impeaching or invalidating the law." The opinion of Justice Gaines in Williams v. Taylor, 83 Tex. 667, 19 S.W. 156, make it unnecessary, in this opinion, to show why the journals of the Legislature or Senate will not be received to impeach an enrolled bill. See also King v. Terrell, Comptroller, Tex.Civ.App., 218 S. W. 42. The evidence relied upon by appellants as establishing that the bill, as passed by the House of Representatives, was passed by the Senate with amendments depends upon entries in the journals of the House. To receive such evidence would be contrary to the "enrolled bill rule".

The requirement of the constitution, Section 38, Article III, is: "The presiding officer of each House shall, in the presence of the House over which he presides, sign all bills and joint resolutions passed by the Legislature, after their titles have been publicly read before signing; and the fact of signing shall be entered on the journals." This requirement was complied with. The act, as it appears in the statement of facts, is duly signed by the Speaker of the House and the Lieutenant Governor, following which is this certificate by the Chief Clerk of the House: "I hereby certify that H.B.No.373 was passed by the House on March 20, 1941, by the following votes: yeas 112, nay 16." Thereunder appears the certificate of the secretary of the Senate in these words: "I hereby certify that H.B.No.373 was passed by the Senate with amendments on April 17, 1941, by the following vote: yeas 29, nay 0; and that the Senate receded

from the amendments to H.B.No.373 as shown by Senate Resolution No. 125 on May 7, 1941, by the following votes: yeas 24, nays 2." And next thereunder, following said certificate, is the signature of the Governor in approval of the bill on May 19, 1941. And the same was then filed in the office of the Secretary of State, as is by him duly certified. H.B.No.373 is therefore duly enrolled, and recourse to the journals of the House or the Senate to impeach its validity will not be permitted. It shows upon its face that it received the required number of votes in each house. And while the Secretary of the Senate saw fit to certify with respect to the Senate's having receded from the "amendments", in so doing he was not discharging any constitutional duty. But if his certificate to such purport is made by him in discharge of his legal duty, it must be conclusively presumed that the Senate receded in a timely and proper way. And, as appellees state: "No evidence behind the final constitutional indicia of passage would be permitted to show that the Senate had not properly 'receded' from its 'amendments'." There are states in which the "enrolled bill rule" does not prevail. But the law in this respect in Texas is too well settled to admit of any question. We will not therefore discuss authorities to the contrary from other states. Therefore we overrule appellants' contention that H.B.373 shows on its face that it was passed in violation of the constitution, or that it was so shown by the journals.

Section 39, Article III, of the Constitution, provides that no law, except a general appropriation act, shall go into effect until ninety days after adjournment of the session unless the case of an emergency, which must be expressed in the act, the Legislature shall by a two-thirds vote of all the members elected to each house otherwise direct; said vote to be taken by yeas and nays and entered upon the journals. As will be seen from the number of votes cast for the bill, including the emergency clause, the majority therefor was sufficient to place the act into force immediately. The court by its judgment found that the vote in question was duly entered upon the journals. The contention of appellants that the act will not be effective until ninety days after adjournment is therefore overruled.

We also overrule appellants' contention that the Legislature in enacting H.

B.373 exceeded its power by placing more onerous burdens upon the people in dry areas in violation of Article 16, Section 20 of the Constitution. Indeed, paragraph (a) of aforesaid Section 20 prohibits the open saloon, and empowers and requires the Legislature to define the term "open saloon" and enact laws against such; and empowers the Legislature to regulate the manufacture, sale, possession and transportation of intoxicating liquor.

Section 4 of H.B.373, the "saving clause" of the act, is not reasonably subject to the construction that it was the intention of the Legislature to save to appellants the privilege of possession, selling or prescribing liquor contrary to the provisions of H.B.373.

Section 3 of H.B.373, which amends subsection (11) relating to carrier permits, is not so unreasonable as to be unconstitutional and void, and does not deprive the intervenor of its property without due process of law. We have ruled above that the regulation of the liquor traffic here involved was one within the power of the Legislature to make.

We have considered the remaining contentions of appellants which present in different form contentions already hereinabove ruled on. We overrule them as being without merit.

Finding no reversible error in the record, the judgment of the trial court will be affirmed, and the temporary restraining order heretofore granted by this court will be dissolved. It is so ordered.

Affirmed, temporary restraining order dissolved.

GRAVES, Justice (dissenting).

The dissent proceeds from these considerations: House Bill No.373—purportedly enacted by the 47th Legislature on May 19 of 1941—in the form in which it was signed by the Governor, was indisputably shown by the admissible evidence heard by the court below not to have been actually passed by both houses of the Legislature, as required By Articles IV, Section 14, and III, Sections 30, 32 and 39, of the Constitution of Texas; it is, therefore, null and void ab initio.

The appellants, in their attacks on the measure in the trial court, protested against its enforcement upon that ground, under the specific allegation that the Senate of Texas "never voted for the passage of

328

the identical bill passed by the House, all of which is apparent from the contents of said H.B.373, as certified to by the Secretary of the Senate and the Chief Clerk of the House."

A brief resume of the facts substantiating this averment, which were shown in the manner and to the degree recited supra, is this:

"H.B.373 was passed by the House on March 20, 1941. Thereafter, it was passed by the Senate, 'with amendments', on April 17, 1941. This fact is shown by the certificate of Bob Barker, the Secretary of the Senate, to the Enrolled Bill.

"These amendments, several in number, are shown in the Senate Journal covering the proceedings for April 17, 1941, and are as follows:

"'Amend H.B.373, page 3, line 35, by adding before the word "shall" the following: "or who does not hold a permit to write narcotic prescription."

"'Amend H.B.No.373, page 4, line 8, by adding after the words "such prescriptions", the following: "in any dry area as defined by law."

"'Amend H.B.No.373 by striking out the following: Section K. page 4, beginning with the word "the" on line 20, as follows: "the keeping of records of prescriptions issued, the making of reports, and the disposal of unused, mutilated or defaced blanks, as it may deem necessary to require physicians to strictly conform to the provisions of this Act."'

"Thereafter, a message was sent to the House by the Senate to the effect that the bill had been passed by the Senate, with amendments. On April 22, after the bill had been returned to the House, a motion was passed 'that the House do not concur in the Senate amendments, and that a conference-committee be requested to adjust the differences between the two houses on the bill.' A message was sent to the Senate, informing it as to such action of the House.

"Thereafter, the Senate passed Concurrent Resolution No. 43 attempting to recall H.B.373 from the House; but the House refused. On May 7, and while the bill was in the possession of the House, the Senate adopted Resolution No. 125 to this effect: 'that the Senate recede from the amendments adopted by the Senate to H.B.373 and declare said H.B.No.373 to have passed

the Senate in the same form in which it was received from the Senate by the House and that the House be notified of this action.' A message was sent to the House as to the adoption by the Senate of such resolution."

These authorities, it is thought, fully support the view that this act was thus an abortive effort to pass a valid law through both Houses of the Legislature, as required by the Constitution: Article IV, Section 14, Texas Constitution; Article III, Sections 30, 32, and 39, Texas Constitution; Hunt v. State, 22 Tex.App. 396, 3 S.W. 233; Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173; Ex Parte May, 118 Tex.Cr.R. 165, 40 S.W.2d 811; Ewing v. Duncan, 81 Tex. 230, 16 S.W. 1000; Humble Oil & Refining Co. v. State, Tex.Civ.App., 104 S.W.2d 174; In re Tipton, 28 Tex.App. 438, 13 S.W. 610, 8 L.R.A. 326; Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S.W. 865; Parshall v. State, Tex.Cr.App., 138 S.W. 759; Wright v. Wiles, 173 Tenn. 334, 117 S.W.2d 736, 119 A.L.R. 456; Southern Ornamental Iron Works v. Morrow, Tex.Civ.App., 101 S.W.2d 336; Longmire v. Taylor, Tex.Civ.App., 109 S.W.2d 525; Galbraith v. Bishop, Tex.Com.App. 287 S.W. 1087; Murchison v. White, 54 Tex. 78; Buss v. Smith, Tex.Civ.App., 125 S.W.2d 712.

Since this conclusion, if sound, determines the merits of this appeal, and requires the striking down of the bill under review in any event, it is considered that the rather wide-ranging agenda tendered on other features by the very able briefs on both sides do not necessitate specific discussion; should a re-hearing ensue, however, they may be again considered then.

To state the gist of these facts in another way: The undisputed evidence shows that this act, as passed by the House of Representatives, was then passed by the Senate, with the "amendments" above set out. That the House thereupon refused to concur in such "amendments", and that the bill was never thereafter returned to the Senate, nor did the Senate ever pass it in its present form, as shown by the photographic copy of it, as enrolled which has been brought up with this record.

The essential essence of these ultimate facts is thus shown upon the face of the enrolled bill itself, indeed, is implemented into it by the certificates thereto of the Chief Clerk of the House and the Secre-

tary of the Senate, respectively, which are both by law made parts of the enrolled bill.

There is, therefore, no illusion here that in the case of a bill "regular and valid on its face, carrying no death-wounds within itself, and a completed work," the enrolled bill does not constitute conclusive evidence of its "passage", as appellees' brief and cited authorities make plain; but that doctrine would seem—from analogy to judgments at any rate—to be just as clearly confined to bills in every essential respect valid upon their faces, and, as unmistakably appears from the facts stated, supra, that is a far-cry from the situation here presented; See Murchison v. White, 54 Tex. 78, and Ewing v. Duncan, 81 Tex. 230, 16 S.W. 1000.

This part of the appellants' brief, edited only as to minutiae of no material importance, is adopted as the concluding part hereof, to-wit:

"So that, we now have all of the information in the enrolled act as to how it was passed, which shows that H.B.373, as passed by the House, was not acceptable to the Senate, but that that body amended the bill, and, as amended, passed it. Then the Senate sought to again amend the bill (by the use of its Senate Resolution No. 125), for the purpose of removing the quoted "amendments" previously voted. Amendments to a bill cannot be had by Senate Resolution, nor can amendments previously voted be removed by such Resolution. Humble Oil & Refining Co. v. State [Tex. Civ.App.], 104 S.W.2d 174; [Ex parte May, 118 Tex.Cr.R. 165], 40 S.W.2d 811; Caples v. Cole, [129 Tex. 370], 102 S.W. 2d [173], 175.

"In the Humble Oil Company case, [104 S.W.2d 185], the Court said: 'Clearly this resolution attempts to amend a statute by a resolution * * * a statute cannot be amended by a resolution.'

"In the case of Caples v. Cole, [129 Tex. 370], 102 S.W.2d [173], 175, [176], the Supreme Court was passing upon a concurrent resolution passed and adopted by both houses, and in condemning same, said: 'It is plain that the resolution not only undertakes to interpret or construe what the original act contained, but also to read into said law words and intentions not expressed in the original act. Statutes cannot be amended in that manner.'

"So that, Senate Resolution No. 125 did not have the effect of withdrawing the 'amendments' adopted by the Senate, which were attached to H.B.No.373, at the time it was voted on and passed by the Senate.

"The 'death-wound' apparent on the face of the bill, and its irregularity and invalidity, is apparent even though we concede for the purpose of this argument the right and authority (which is here specifically denied) of the Senate to amend H.B. 373 by said resolution so as to strike out the amendments attached to the bill, and a part thereof, at the time the Senate passed H.B.No.373. In this condition, we would find the bill as passed by the House without any subsequent vote having been taken thereon by the Senate after striking out and withdrawing the amendments thus attached and a part of its bill. The enrolled bill affirmatively shows that the only time the Senate ever passed the bill was 'with amendments.' No part of the enrolled bill evidences its passage by the Senate in the form in which it was received from the House. Therefore, the Senate never passed the bill as passed by the House. Neither journals nor other extrinsic evidence is necessary to substantiate this fact. It is disclosed substantially from an examination of the contents of the enrolled bill. Section 14, Article IV, of the Constitution of Texas, requires 'Every bill which shall have passed both houses of the Legislature shall be presented to the Governor for his approval,' etc.

"Judge Gaines, in the case of Williams v. Taylor, [83 Tex. 667], 19 S.W. 156, and Judge Sharp, in the case of Jackson v. Walker, [121 Tex. 303], 49 S.W.2d 693, and Judge Willson, in the case of Hunt v. State, [22 Tex.App. 396], 3 S.W. 233, all hold that this provision of the Constitution that both branches of the Legislature shall pass a bill before it is presented to the Governor for approval, is mandatory. All of the opinions are to this effect. Judge Gaines and others merely refused to consider evidence beyond the enrolled bill to determine such question judicially."

Under these conclusions, the trial court's judgment should be reversed, and the cause remanded to it, with instructions to grant the injunction in all substantial respects as prayed for by these appellants.